IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PIZZADILI PARTNERS, LLC, : 
                               :    C.A. No. K16A-02-004 WLW

        Petitioner,   :    Kent County

v.                           :

                               :

KENT COUNTY BOARD OF     :
ADJUSTMENT AND             :
LTR PROPERTIES, LLC,      :

                               :

        Respondents.   :

Submitted: May 23, 2016
Decided: August 26, 2016

**OPINION AND ORDER**

Upon an Appeal from the Decision of the
Kent County Board of Adjustment.
*Reversed.*

Thomas Mammarella, Esquire, and William M. Kelleher, Esquire, of Gordon, Fournaris & Mammarella, P.A., Wilmington, Delaware; attorneys for Petitioner Pizzadili Partners, Inc.

Noel E. Primos, Esquire, of Schmittinger and Rodriguez, P.A., Dover, Delaware; attorney for Respondent Board of Adjustment of Kent County.

John W. Paradee, Esquire, of Baird Mandalas & Brockstedt, LLC, Dover, Delaware; attorneys for Respondent LTR Properties, LLC.

WITHAM, R.J.

Before the Court is the appeal of Petitioner Pizzadili Partners, LLC ("Pizzadili") from a decision by the Kent County Board of Adjustment ("the Board"). The Board denied Pizzadili's appeal seeking the reversal of a finding that a vehicle racetrack is a permitted use on real property located in the General Business District ("BG District"). For the following reasons, the decision of the Kent County Board of Adjustment is REVERSED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 26, 2015, LTR Properties, LLC ("LTR") submitted a Zoning Certificate of Use ("COU") application for a property located at 10182 South DuPont Highway, on the northwest corner of the intersection of U.S. Route 13 and Peach Basket Road. The property is situated north of Felton, Delaware, lies within the territorial limits of Kent County, and is located in a BG District. LTR currently operates the Delaware Public Auto Action on one portion of the property. Another portion of the property is utilized as a horse training facility. LTR sought a COU that would allow a vehicle racetrack as a permitted use on the property. LTR proposed to replace a one-half mile horse track currently located on the property with a one-quarter mile vehicle racetrack. LTR stated that the engines used in the vehicles would be no larger than four cylinders, all with noise-dampening devices, and that several classes would consist of one and two-cylinder engines.

A parcel of land adjacent to the LTR property is owned by Pizzadili. The Pizzadili property contains a vineyard and a banquet facility that has been in operation for the past twenty years. The facility is open from noon until 5 p.m. daily,

2

but may host functions from 5 p.m. until 11 p.m. The facility also hosts weddings and rehearsals on weekends.

On October 28, 2015, the Kent County Department of Planning Services ("the Department") issued a COU stating that a vehicle racetrack was a permitted use on the property. The COU was subject to certain conditions such as exterior lighting must be shielded to deflect light away from adjacent properties and passing motorists, and comply with the provisions of the County Noise Ordinance. On November 25, 2015, Pizzadili filed an appeal with the Board challenging the Department's issuance of the COU. Pizzadili argued that an automobile racetrack is not a permitted use on the property, and further argued that a racetrack can only be permitted on property located in a Limited Industrial District ("IL District").

On January 21, 2016, the Board conducted a public hearing at which the petitioner and thirteen other opponents raised issues pertaining to damage to area businesses and residential areas. Opponents raised concerns related to noise, water, air, and soil pollution from the proposed racetrack. Pizzadili expressed concern that dust clouds from the racetrack could harm the grapes by covering them in silt, thereby disrupting the flavor profile or ultimately killing them. Pizzadili also testified that he expects a significant number of cancellations if the racetrack is allowed. The owner of the property seeking the COU, Ron Faison, testified that he would not allow racing if a wedding was taking place, that noise limits would be enforced with a decibel meter, that six to eight foot trees would be planted between the properties, that the clay track would be treated with detergent to limit dust, and that he would install LED

3

lights in order to spread less light on adjoining properties. Mr. Faison further testified to the positive economic impact the racetrack would have and provided a petition with 254 signatures of support.

On February 18, 2016, the Board issued its decision. The Board noted that because the use of a vehicle racetrack is not specifically listed in the zoning ordinance, the Department staff had used a standard protocol to determine whether this use would be permitted. The protocol outlined in the Kent County Zoning Code ("the Code") directed the use of the Standard Industrial Classification manual ("SIC manual") to determine whether a BG District would allow a vehicle racetrack. The Department also reviewed past zoning decisions. Section 205-169 of the Code contains a list of permitted uses in a BG District. The Board noted that "[c]ommercial recreation facilities, including miniature golf, tennis, racquetball and handball courts, skateboard parks, skating rinks, batting cages" are permitted uses in a BG District. The Board found the list to be exemplary yet nonexclusive, and that the use of the word "including" without any words of limitation required that the term "commercial recreational facility" be broadly interpreted.

The Board noted that reference to the SIC manual, as dictated by Sections 205-15(B)[1] and 205-168(C)[2] of the Code, led to the conclusion that a "dirt vehicle

---

[1] Kent Cty. C. § 205-15(B) states:

Any use which is not specifically listed as a permitted or conditional use in any zoning district shall be identified within the Standard Industrial Classification Manual and placed within the proper zoning category. The proper zoning district shall be found by identifying the major use division in which the use is located and by placing the use in the district in which uses in the specific major use

4

racetrack" qualified as a "commercial recreation facility." Section 205-169 lists a commercial recreation facility as a permitted use in the BG District. This conclusion was reached by locating vehicle dirt track under SIC Industry No. 7948, "Racing, Including Track Operation."[3] The description for this section covers promoters and participants in racing activities, including racetrack operators, operators of racing stables, jockeys, racehorse trainers, and race car owners and operators. The description further lists various types of racing and related activities, including dragstrip operations, horse racing, motorcycle racing, auto racing, racetrack operation: e.g. horse, dog, auto, operation of racing stables, speedway operation, and stock car racing.[4] Industry Number 7948 falls under Industry Group Number 794, "Commercial Sports," which falls under Major Group Number 79, "Amusement and Recreation Services," which in turn falls under the Division of "Services." The Board therefore concluded that a "dirt vehicle racetrack" was classified as a commercial recreational facility, and that such facilities are a permitted use in the BG District.

---

division are listed as permitted in that district.

[2] Kent Cty. C. § 205-168(C) states:

All uses in the BG - General Business District can be referenced in the Standard Industrial Classification Manual of 1987, under sections entitled "Wholesale Trade," "Retail Trade," "Services," "Finance, Insurance and Real Estate," "Construction," "Public Administration" and "Transportation, Communications, Electric, Gas and Sanitary Services."

[3] The SIC Division structure may be found online at https://www.osha.gov/pls/imis/sic_manual.html. The description for Industry No. 7948: Racing, Including Track Operation may be found at https://www.osha.gov/pls/imis/sic_manual.display?id=182&tab=description.

[4] Of note, although Industry Number 7948 does encompass auto racing, the term "dirt vehicle racetrack" is not listed.

The Board next addressed Pizzadili's contention that a racetrack is only permitted as a conditional use in an IL District. Racetracks were added as a conditional use in the IL District as part of a 1991 revision of the Code.[5] The term "Racetracks" is found in Section 205-185, which lists conditional uses in the IL District, and in Section 205-330, which lists six minimum conditions for the use of racetracks.[6] Of these six conditions, the Board found that two refer to horse racing. Condition (2) requires that no stables be located within 500 feet of any adjoining property line, and condition (4) requires that all licenses for operation of the racetrack be obtained from the State Racing Commission. At that time of the revision, the only racetrack in Kent County was the Harrington Raceway which was located at the State Fairgrounds, and the only racing commissions referenced in the Delaware Code

---

[5] *Decision of the Kent Cnty. Bd. of Adjustment*, Application No. A-16-06, at 7 (Jan. 21, 2016) [hereinafter *Notice of Decision*].

[6] Kent Cty. C. § 205-330 is titled "Racetracks" and states:
A. Conditions of this use shall be as follows:
(1) It shall have frontage on a state-maintained highway.
(2) No stables shall be located within 500 feet of any adjoining property line.
(3) All entrances and exits to a racetrack shall have been approved by the Delaware Department of Transportation.
(4) All licenses for operation of a racetrack have been obtained from the State Racing Commission.
(5) Off-street parking is provided in accordance with the requirements in Article XVII, Parking.
(6) All requirements, regulations and recommendations submitted by any agency member of the Development Advisory Committee shall be satisfied.
B. The reviewing body may impose any other appropriate or more stringent conditions it deems necessary to protect the health, safety and welfare of the neighborhood.

where the State Harness Racing Commission and the State Thoroughbred Racing Commission.[7] Neither Section 205-185 nor Section 205-330 provide a definition for the term "Racetracks." Based on the foregoing, the Board found it was reasonable for the Department to determine that the use of the term "Racetrack" within the IL District was intended to be specific to horse racing and not applicable to any other type of racing.

The Board then reviewed past zoning decisions. Relying on a 2001 decision by the Kent County Development Advisory Committee regarding the Fairlane Acres go-cart track in an Agricultural Residential District ("AR District"),[8] the Board found that the Kent County Levy Court("Levy Court") had already set a precedent classifying a vehicle racetrack as a commercial recreational facility. In the 2001 decision, after a public hearing, a dirt racetrack for go-cart racing was approved as a conditional use on a property located in an AR District. The owner was not required to comply with the Racetrack requirements found in Section 205-330; however, numerous conditions were imposed. Citing the 2001 decision, the Board noted that "[p]re-existing decisional precedent (and LTR's constitutional right to equal protection under the law) dictates that the same interpretation be adopted in the present case."[9]

The Board also found support for the conclusion that a vehicle racetrack falls

---

[7] *Id.*

[8] The decision is available at Respondent LTR Properties, LLC's Answering Brief, Appx. at LTR025.

[9] *Notice of Decision, supra* note 5, at 8.

within the definition of a commercial recreational facility in recent actions undertaken by the Levy Court. The Levy Court is currently considering amendments that would create a new conditional use called "motorsports" and specifically exclude motorsports from the definition of "commercial recreational facilities." The Board further noted that "any question over the proper interpretation of "commercial recreation facility" in the Code, and specifically over whether such a definition includes a dirt vehicle racetrack, must be construed in favor of the landowner, in this case LTR Properties."[10] The Board denied Pizzadili's appeal of the Department's decision to issue a COU.

On February 29, 2016, Pizzadili filed an appeal of the decision of the Board of Adjustment of Kent County with this Court.

## II. STANDARD OF REVIEW

When a decision of the Kent County Board of Adjustment is appealed, this Court's review is "restricted to a determination of whether the Board's decision is free from legal errors and whether the Board's finding of facts and conclusions of law are supported by substantial evidence in the record."[11] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] "If the record contains substantial evidence, then the Court is

---

[10] *Id.*

[11] *Tolson v. Kent Cnty. Dep't. of Planning Serv.*, 2012 WL 1995796, at *2 (Del. Super. May 22, 2012).

[12] *McKinney v. Kent Cnty. Bd. of Adjustment*, 2002 WL 1978936, at *4 (Del. Super. July 31, 2002) (citing *Wadkins v. Kent Cnty. Bd. of Adjustment*, 1999 WL 167776, at *2 (Del. Super. Feb.

prohibited from re-weighing the evidence or substituting its judgment for that of the Board."[13] The Board must "particularize its findings of fact and conclusions of law to enable the Superior Court to perform its function of appellate review."[14] After reviewing the Board's decision, "[t]he Court may reverse or affirm, wholly or partly, or may modify the decision brought up for review."[15] In the case *sub judice*, the holding of the Court rests upon issues of statutory interpretation. Questions of law, including questions of statutory interpretation, are reviewed *de novo*.[16]

## III. DISCUSSION

The Board's holding that a vehicle racetrack is a commercial recreation facility and thus allowed as a permitted use in a BG District implicates three distinct issues that must be addressed. The first issue is whether the term "Racetracks" as used in Sections 205-185 and 205-330 includes vehicle racetracks. The second issue is whether a vehicle racetrack can be properly classified as a "commercial recreation facility." The third issue is whether the SIC manual procedures used by the Department complied with the Code. As always, the Court's decision will be guided by the intent of the governing body. In this case, the governing body is the Kent

---

23, 1999)).

[13] *Dover Land Holdings, LLC v. Kent Cnty. Bd. of Adjustment*, 2016 WL 3951699, at *2 (Del. Super. July 15, 2016).

[14] *Gilman v. Kent Cnty. Dep't of Planning*, 2000 WL 305341, at *2 (Del. Super. Jan. 28, 2000) (citing *Profita v. New Castle Cnty. Bd. of Adjustment*, 1992 WL 390625, at *3 (Del. Super. Dec. 11, 1992)).

[15] 9 *Del. C.* § 4918(f).

[16] *Freeman v. X-Ray Associates*, P.A., 3 A.3d 224, 227 (Del. 2010).

County Levy Court.

### *The Intent of the Kent County Levy Court*

Because the intent of the Levy Court is the guiding principle when interpreting the Code, it is instructive to review the purpose of the Code. It should be noted that "principles of statutory construction generally apply with equal force to municipal ordinances"[17]; thus, any principle applying to a statute would generally apply to the Code. In Delaware, it is well established that when a statute is clear and unambiguous, there is no need for statutory interpretation.[18] It is also well established that the primary purpose when applying methods of statutory interpretation is "to determine and give effect to legislative intent."[19] This intent must prevail even if preserving legislative intent results in "an interpretation not consistent with the strict letter of the statute."[20] When construing a statute, "literal or perceived interpretations which yield mischievous or absurd results are to be avoided."[21] To ensure legislative intent is properly construed, methods of statutory interpretation require the statute be

---

[17] *One-Pie Investments, LLC v. Jackson*, 43 A.3d 911, 914 (Del. 2012). *See also* 1A Sutherland Statutory Construction § 30:6 (7th ed. 2015).

[18] *Ridgewood Manor II, Inc. v. Delaware Manufactured Home Relocation Auth.*, 2014 WL 7453275, at *5 (Del. Ch. Dec. 31, 2014) (citing *State v. Skinner*, 632 A.2d 82, 85 (Del.1993)). *See also* 2A Sutherland Statutory Construction § 45:2 (7th ed. 2015).

[19] *Ridgewood Manor II, Inc.*, 2014 WL 7453275, at *5.

[20] *Mayor and Council of Wilmington v. Dukes*, 157 A.2d 789, 793-94 (Del. 1960). *See also Hayward v. Gaston*, 542 A.2d 760, 768 (Del. 1988) ("If a literal interpretation of a statute leaves a result inconsistent with the general statutory intention, such interpretation must give way to general intent.").

[21] *One-Pie Investments, LLC*, 43 A.3d at 914; *Mayor and Council of Wilmington v. Dukes*, 157 A.2d 789, 793-94 (Del. 1960).

read in the aggregate rather than in parts, and that each section be "read in light of all others to produce a harmonious whole."[22] No words in a statute should be "construed as surplusage if there is a reasonable construction which would give them meaning, and courts must ascribe a purpose to the use of statutory language, if reasonably possible."[23]

Chapter 205 of the Code regulates zoning in Kent County. Section 205-3 contains a statement of purpose applicable to the Code as a whole, and each zoning district contains a statement of purpose applicable to that district. The general purpose of Chapter 205 is

> to promote the health, safety, morals, convenience, order, prosperity and general welfare of the County residents; to provide adequate light and air; to promote the conservation of natural resources; to protect the groundwaters, surface waters and estuaries of the County; to prevent environmental pollution; to avoid undue concentration of population; to conserve and protect the value of property; to facilitate the adequate provision of transportation, water, sewerage, schools, recreation and parks; and to facilitate the initiation of the Comprehensive Plan and other public requirements.[24]

In interpretation and application, the provisions of chapter 205 are to be considered as minimum requirements and be "liberally constructed to protect the safety, health

---

[22] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 343 (Del. 2012).

[23] *Chase Alexa, LLC v. Kent Cnty. Levy Court*, 991 A.2d 1148, 1152 (Del. 2010).

[24] Kent Cty. C. § 205-3.

and welfare of the citizens of Kent County."[25]

The purpose of the BG District is "[t]o provide for a broad range of commercial activities and a variety of large retail stores and related activities occupying prime retail land and serving a regional community",[26] and "[t]o prohibit uses which may be detrimental to residential neighborhoods and communities for reasons such as odor, smoke, dust, fumes, fire, vibrations, noise or hazardous conditions."[27]  Any interpretation of the Code must be made using these stated purposes as a guide.

### The Racetrack Issue

The term "Racetracks" is undefined within the Code.  The Board's holding that the term is specific to horse racing was based on two findings: (1) the historical setting in Kent County when the term "Racetracks" was added; and (2) that two elements of section 205-330 appear to be specific to horse racing.  No legislative history[28] is provided to support the Board's conclusion.  For the following reasons, the Court is not convinced that the Board's rationale supports the conclusion that the term "Racetracks" is specific to horse racing.

First, reference to the fact that the only racetrack existing in Kent County when the Code underwent the 1991 revision is inapposite.  The Harrington Raceway

---

[25] Kent Cty. C. § 205-4.

[26] Kent Cty. C. § 205-166(A).

[27] Kent Cty. C. § 205-166(B).

[28] Legislative history is defined by Black's Law Dictionary as "[t]he proceedings leading to the enactment of a statute, including hearings, committee reports, and floor debates."  Black's Law Dictionary 1039 (10th ed. 2011).

property was located within an IL District when the Code was revised and remains so today. However, this information provides no insight into the legislative process. Where legislative history may provide insight into the intent of the governing body, historical context does not. Because no legislative history is provided, the Court cannot determine whether the 1991 revision was forward looking and intended to limit the placement of all types of racetracks to the IL District, whether the revision was an attempt to codify a standard that already existed in practice, or whether the revision intended to limit only horse racetracks to the IL District. Any deductions regarding the relationship between the existence of the Harrington Raceway and the Code revision based on historical events in Kent County in 1991 would be purely speculative.

Second, that section 205-330 contains elements that may be specific to horse racing does not preclude the section from referring to other types of racing. There is a mention of stables, but no mention of horses. Reference is also made to the requirement that all licenses for operation of a racetrack must be obtained from the State Racing Commission. The Board notes that the only racing commissions found in the Delaware Code are the State Harness Racing Commission and the State Thoroughbred Racing Commission. The Board concludes that the Code must therefore refer to these commissions. It is not clear whether the Levy Court meant racing commissions, past and future, in a generic sense, or only racing commissions existing at the time of the revision. Again, with no legislative history, any deductions regarding the racing commission to which the Levy Court was referring would be

speculative.

When a term is undefined, established rules of statutory construction and the Code offer definitional guidance. First and foremost, "the Court must seek to ascertain and give effect to the intention of the Legislature as expressed in the Statute itself."[29] When interpreting the Code, the intent of the Levy Court "is gleaned from what is said, not from what they may have intended to say."[30] In such cases, a court's role is limited to an application of the literal meaning of the words.[31] Moreover, the Code provides a mechanism for determining a definition when none is given. Section 205-5 directs the use of common dictionary definitions when a definition has not been provided.

The Levy Court could have specified horse racetracks if their intent was to limit the term "Racetracks" to those tracks upon which horses are raced.[32] Because no limiting words are associated with the term "Racetracks," the Court must look to the literal meaning of the term in order to give effect to the intention of the Levy Court; however, this view must be taken in the context of the intent of the Levy Court

---

[29] *Keys v. State*, 337 A.2d 18, 22 (Del. 1975) (citing *Ernest DiSabatino & Sons, Inc. v. Apostolico*, 260 A.2d 710 (Del. Super. 1969)).

[30] *State v. Croce*, 1997 WL 524070, at *5 (Del. Super. May 14, 1997) (quoting 2A Sutherland Statutory Construction § 46:1 (7th ed. 2015)).

[31] *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del. 1985).

[32] *United States v. Goldenberg*, 168 U.S. 95, 102-03 (1897) ("The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used. He is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the legislator.").

when the Code underwent revision. A racetrack is commonly defined as a course or track for racing.[33] Additionally, courts have commonly referred to tracks used by both horses and vehicles as racetracks.[34] Thus, the Court finds that the term "Racetracks" encompasses vehicle racetracks.

The Board's argument that including any racetrack within the definition of "racetracks" must necessarily apply to foot races and model car races and would therefore lead to an absurd result is well taken. However, it must be remembered that when construing a statute, literal interpretations which yield absurd results are to be avoided.[35] The Court has not been asked to determine whether foot races or model car races would be encompassed by the term "Racetracks." The issue before the Court is limited to whether a vehicle racetrack is encompassed in the term "Racetracks." The Court notes that the intent of the Levy Court is to contain certain undesirable conditions to specified zoning districts. This intent is consistent with the

---

[33] A racetrack is defined as: "1. a racecourse 2. a track for motor racing." The Concise Oxford English Dictionary 1183 (12th ed. 2011). A racecourse is defined as "a ground or track for horse or dog racing. *Id.* A racetrack may also be defined as "[a]n often oval course designed for racing." Webster's New College Dictionary 933 (3rd ed. 2008).

[34] *See Tucker v. Seacoast Speedway*, 1999 WL 743170, at *1 (Del. Super. July 1, 1999) (discussing the owner of a wrecker truck who was "willing to work on the wrecker crew if the racetrack was short-handed."); *Wilkins v. Levy Court Comm'rs*, 1981 WL 88252, at *1 (Del. Ch. May 28, 1981) (noting that grounds upon which the Delaware Four Wheelers wished to operate their off-road vehicles was a "species of racetrack."); *Hessler, Inc. v. Ellis*, 167 A.2d 848, 849 (Del. Ch. 1961) (discussing land that "was to be used for the construction and operation of an automobile racetrack.").

[35] "If the context makes clear that a statute uses a common law term with a different meaning, the common law meaning is of course inapplicable." Antonin Scalia & Bryan A. Gardner, *Reading Law: The Interpretation of Legal Texts* 321 (Thomas/West 2012).

purpose of chapter 205 as stated in section 205-3. A definition of "Racetracks" that encompasses vehicle racetracks gives effect to the intention of the Levy Court and is consistent with an interpretation of the Code as a harmonious whole.

### *The "Commercial Recreational Facility" Issue*

Assuming *arguendo* that the term "Racetracks" did not encompass vehicle racetracks, the process of determining whether vehicle racetracks are allowed in a BG District would continue. To this end, the Board found that a vehicle racetrack is a permitted use in a BG District because a vehicle racetrack is a commercial recreation facility. However, this finding was in error. First, even if the term "commercial recreation facility" was found to generally include vehicle racetracks, the listing of commercial recreational facilities in the BG District is limited by the examples that follow the listing. Second, relying on the SIC manual to determine that a vehicle racetrack is a commercial recreation facility does not comport with procedures contained in the Code. Third, precedent relied on by the Board is not persuasive.

Moreover, when giving effect to the intent of the Levy Court and in viewing the Code as a harmonious whole, it must be noted that commercial recreation facilities are not limited to the BG District. The Code allows commercial recreational facilities or commercial recreation facilities in five zoning districts.[36] Such facilities are allowed in the Agricultural Conservation District ("AC District") as a conditional

---

[36] The only discernable difference between the phrases is that recreation is a noun and recreational is an adjective. For all intents and purposes, the terms are identical.

use,[37] in the AR District as a conditional use,[38] in the Medium-Density Residential District ("RS5 District") as a conditional use,[39] in the Multifamily Residential District ("RM District") as a conditional use,[40] and in the BG District as a permitted use.[41] It is notable that commercial recreation facilities are allowed in the BG District as a permitted use, and only as a conditional use in the other districts.[42] In the AC, AR, RS5, and RM Districts, the term "commercial recreational facility" stands alone. Only in the BG District is the term "commercial recreation facility" modified by the phrase "including miniature golf, tennis, racquetball and handball courts, skateboard parks, skating rinks, batting cages."

In *Wolf v. Board of Adjustment of New Castle County*, the Superior Court was called on to decide whether a commercial nursery fell within the definition of "agricultural purpose" in order to determine whether a commercial nursery was a permitted use on property zoned R-1-C (one-family residential).[43] The *Wolf* Court stated that:

---

[37] Kent Cty. C. § 205-48.

[38] Kent Cty. C. § 205-64.

[39] Kent Cty. C. § 205-95

[40] Kent Cty. C. § 205-110.

[41] Kent Cty. C. § 205-169.

[42] In *Wolf v. Bd. of Adjustment of New Castle Cty.*, the Court was called on to decide whether a commercial nursery fell within the definition of "agricultural purpose" in order to determine whether a commercial nursery was a permitted on property zoned R-1-C (one-family residential). 1983 WL 473277, at *1 (Del. Super. July 19, 1983).

[43] *Wolf v. Bd. of Adjustment of New Castle Cty.*, 1983 WL 473277, at *1 (Del. Super. July 19, 1983).

> Since a commercial nursery is expressly permitted in the less restrictive zoning district, R-2 (agricultural and general purpose), only if a special exception is granted, the Board correctly ruled that it was obviously not the intent that this use be permitted as a matter of right in the more restrictive zoning district, R-1-C.[44]

LTR argues that *Wolf* is not applicable to Kent County because the ruling applied to the New Castle County Board of Adjustment, and because the Kent County Code is rife with examples of uses that have been authorized as conditional uses in less restrictive zones while being authorized as permitted uses in more restrictive zones.

The rationale in *Wolf* is sound. When interpreting the Code as a harmonious whole, common sense would dictate that a use allowed as a conditional use in a less restrictive zoning district would not be allowed as a permitted use in a more restrictive zoning district. As the governing body, the Levy Court retains the power to override this rationale when they feel circumstances justify an exception, and, as LTR points out, the Levy Court has done so in the past. However, the exceptions cited by LTR[45] are specific uses and not generally subject to differing interpretations. *Wolf* dealt with the more generic term "agricultural purpose" just as this Court is dealing with the generic term "commercial recreational facility." Although the Court does not hold that a use listed in a less restrictive zoning district as a conditional use could never be listed in a more restrictive zoning district as a permitted use, the

---

[44] *Id.*

[45] LTR cites numerous examples including public utilities, dry cleaning, radio and television stations, automotive repair shops, commercial greenhouses, home occupation, banks, community centers, and restaurants. Respondent LTR Properties, LLC's Answering Brief at 19-20, 20 n.56.

18

holding in *Wolf* is persuasive when considering ambiguous terms.

*The principle of ejusdem generis applies to the list of terms following "commercial recreation facility"*

The Board concluded that the list of activities following the term "commercial recreation facility" in section 205-169 was exemplary yet nonexclusive, and that the use of the word "including" without any words of limitation required that the term "commercial recreation facility" be broadly interpreted. The Respondents agreed and further argued that the word "including" precludes the use of the principle of *ejusdem generis*.[46] However, the Delaware Supreme Court has not found that a list preceded by the term "including" prohibits the rule of *ejusdem generis*. In *Delaware Board of Nursing v. Gillespie*, the Court was required to interpret a list that was preceded by the term "including."[47] The Court was interpreting title 16, section 903 of the Delaware Code which stated:

> Any physician, and any other person in the healing arts *including* any person licensed to render services in medicine, osteopathy, dentistry, any intern, resident, nurse, school employee, social worker, psychologist, medical examiner or any other person who knows or in good faith suspects child abuse or neglect shall make a report in accordance with

---

[46] Black's Law Dictionary defines ejusdem generis as:
> A canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only those terms of the same class of those listed.

Black's Law Dictionary, 631 (10th ed. 2011).

[47] *Delaware Bd. of Nursing v. Gillespie*, 41 A.3d 423, 427 (Del. 2012).

§ 904 of this title.[48]

Relying on the principles of *ejusdem generis* and *noscitur a sociis*,[49] the Court stated that "it is reasonable to interpret the statutory phrase 'or any other person' in light of the preceding, specific enumeration of persons who would likely learn of child abuse in the scope of their duties in schools, hospitals, and counseling services."[50] That the list was preceded by the term "including" in no way affected the application of the principle of *ejusdem generis*.

A classic case of *ejusdem generis* presents an enumeration of persons or things followed by general language. For example, the Supreme Court of Delaware noted the phrase "[i]f the position offered is vacant due directly to a strike, lock-out, or other labor dispute" was a typical example of the *ejusdem generis* doctrine.[51] The specific words "strike" and "lockout" are followed by the general words "other labor dispute."[52] However, the principle of *ejusdem generis* "applies equally to the opposite sequence, i.e., specific words following general ones, to restrict application of the general terms to things that are similar to those enumerated."[53]

---

[48] *Id.* (emphasis added).

[49] Black's Law Dictionary defines noscitur a sociis as:
> A canon of construction holding that the meaning of an unclear word or phrase, especially one in a list, should be determined by the words immediately surrounding it.

Black's Law Dictionary, 1224 (10th ed. 2011).

[50] *Gillespie*, 41 A.3d at 428.

[51] *Bigger v. Unemployment Comp. Comm'n*, 53 A.2d 761, 765 (Del. 1947).

[52] *Id.*

[53] 2A Sutherland Statutory Construction § 47:17 (7th ed. 2015).

Thus, the words following "commercial recreation facility" in the BG District limit activities to be encompassed by "commercial recreation facility" to those that are similar to the activities listed.[54] If the Levy Court had intended the list following the term "commercial recreation facility" to be so broad and far-reaching so as to include uses such as a vehicle racetrack, it certainly would have clearly and positively indicated this intent. Moreover, such a broad interpretation would render the list superfluous.

*The SIC manual does not place a vehicle racetrack within
the definition of commercial recreation facility.*

Sections 205-15(B) directs that the SIC manual be used when a use is not specifically listed as a permitted or conditional use. When a use is not listed, the SIC manual is referenced to determine the major use division in which the non-listed use is located. The SIC manual contains a hierarchal top-down structure with "Divisions" (major use divisions) constituting the top tier. Divisions consist of various Major Groups, Major Groups consist of Industrial Group Numbers, and Industrial Group Numbers contain specific Industry Numbers. Determining the proper major use division for a particular non-listed use requires locating the specific Industry Number for the non-listed use to determine the major use division under which the non-listed use falls. Once the major use division has been identified, the non-listed use is placed

---

[54] In its answering brief, the Board noted that substantial evidence was presented that neither dust nor noise would be an issue with the proposed vehicle racetrack, but this ruling would apply to all racetracks proposed in a BG District. The Court does not doubt that Mr. Faison's efforts to limit the impact on neighboring properties are sincere, but these efforts are not pertinent to this case.

in the district in which the specific major use division is listed as permitted. There are no intermediate steps. However, the Board employed a process that seems to rely on intermediate steps to conclude that a vehicle racetrack is a commercial recreation facility.

The Board's decision noted that vehicle dirt racetracks fall under:

**Division** - Services
    **Major Group** 79, Amusement and Recreation Services
        **Industry Group No.** 794, Commercial Sports
            **Industry No.** 7948, Racing, Including Track Operation

Dirt vehicle tracks were properly classified under the major use division "Services", but the Department and the Board further determined that a dirt vehicle track is classified as a commercial recreation service. The Board's decision does not state how they came to this specific determination, but the Court must assume that the Board referenced the Major Group, Amusement and Recreation services, the Industry Group Number, Commercial Sports, and combined the terms to create commercial recreation facility. Nothing in the Code directs the use of the intermediate levels of the SIC hierarchy. Moreover, nothing in the Code directs the use of the SIC manual for definitional purposes. The Code merely directs that the non-listed use be placed in the zoning districts which allows the major use division. Thus, a determination based on the SIC manual that a vehicle racetrack is a commercial recreation facility is unfounded.

*The Fairlane Acres decision is not precedent*

The precedential value of the 2001 report allowing the Fairlane Acres go-cart

track as a conditional use in an AR District is limited. The Regional Planning Commission determined with no discussion that a go-cart track was a commercial recreational facility. As noted earlier, the term "commercial recreational facility" is undefined. The definition of the term was not questioned, and therefore not subjected to debate. The apparent determination by the Regional Planning Commission that a go-cart track was a commercial recreational facility cannot be considered precedential.

Although commercial recreation facilities are allowed in a BG District as a permitted use, they are allowed in an AR District only as a conditional use. Where the permitted use in a BG District is followed by examples, the conditional use in an AR District is not. Thus, even if erroneous, the assumption that a go-cart track is a commercial recreational facility does not necessarily run afoul of the intent of the Levy Court. As a conditional use, the go-cart track would be subjected to whatever limitations were deemed appropriate to protect neighboring properties.

Moreover, the AR District was not created with the same purpose as the BG District. The AR District was created to provide for a wide variety of farming while also providing for low-density residential development, to foster environmentally sound development, and to serve as a transition/buffer zone between agricultural and residential uses.[55] The language prohibiting uses detrimental to residential neighborhoods "for reasons such as odor, smoke, dust, fumes, fire, vibrations, noise or hazardous conditions" is absent.

---

[55] Kent Cty. C. § 205-60.

***Results of the process dictated by section 205-15(B) must be tested
against the stated purpose of the zoning district before a non-listed
se may be allowed***

Because a vehicle racetrack is not listed in the Code, section 205-15(B) requires that the SIC manual be referenced. The procedures outlined in section 205-15(B) require that the Division in which the non-listed use is located be identified. Here, a dirt vehicle racetrack is most closely related to racetrack operation, and racetrack operation is found in the Division labeled "Services." Section 205-15(B) then requires that the non-listed use, dirt vehicle racetrack, be placed "in the district in which uses in the specific major use division is listed as permitted in that district." Thus, dirt vehicle racetracks would be allowed in any zoning district that permits the major use division titled "Services." The Code includes the major use division titled "Services" in the following zoning districts: the AC District; the AR District; the Single-Family Residential District ("RS1 District"); the RS5 District; the RM District; the Residential Manufactured Home District ("RMH District"); the Neighborhood Business District ("BN District"); the Neighborhood Business District ("BN1 District"); the BG District; the Office/Office Complex District ("OC District"); and the IL District. In other words, a dirt vehicle racetrack would be allowed in any district except the General Industrial District ("IG District").

The intent of the Levy Court must prevail even when preserving that intent results in an interpretation not consistent with the strict letter of the Code. When construing the Code, "literal or perceived interpretations which yield mischievous or

24

absurd results are to be avoided."[56] Although the Code clearly dictates a process for determining the zoning districts in which a non-listed use may be placed, a mechanical application of that process can lead to absurd results. For example, neither dragstrip operation nor stock car racing is listed as a use in the Code, yet both are listed in the SIC manual under Industry No. 7948 (Racing, Including Track Operation). Thus, if the procedures contained in the Code were mechanically applied, the absurd result would be that dragstrips and stock car racing facilities would be allowed in all districts except the IG District.

Because strict reliance on SIC manual can lead to mischievous or absurd results, the manual must only be used as a first step. Results obtained after consulting the SIC manual must be tested against the stated purpose of a particular zoning district before the non-listed use is placed in that district to ensure that the non-listed use will not violate the purpose of the zoning district. Thus, a two-step process is required before a non-listed use can be placed in a zoning district. First, after finding the major use division containing the non-listed use, the section of the Code relating to the zoning district in which the non-listed use is requested should be consulted to ensure the major use division is allowed in that district. If the major use division is allowed in the zoning district, the non-listed use must be compared to the stated purpose of the district to ensure to ensure compliance with the intent of the Code.

In the case *sub judice*, the landowner sought a COU allowing him to place a dirt vehicle racetrack on his property. If, *arguendo*, a vehicle racetrack was a non-

---

[56] *One-Pie Investments, LLC*, 43 A.3d at 914; *Dukes*, 157 A.2d at 793-94.

listed use, then the SIC manual would be consulted. A dirt vehicle racetrack is categorized under the major use division "Services." The property on which the landowner wishes to create a dirt vehicle racetrack is located in a BG District. Section 205-168(C) lists the major use division "Services," thus a dirt vehicle racetrack survives the first part of the process. However, the inclusion of a dirt vehicle racetrack is subject to the provisions of section 205-166(B) which states that the purpose of the BG District is "[t]o prohibit uses which may be detrimental to residential neighborhoods and communities for reasons such as odor, smoke, dust, fumes, fire, vibrations, noise or hazardous conditions." Whether a dirt vehicle racetrack would violate the BG District zoning provisions based on the purpose of the zoning district as stated in section 205-166 is a question of fact to be determined by the Department.

In summary, if the Court had not found the term "Racetracks" as a listed use in the IL District to encompass vehicle racetracks, the Court would have found that a dirt vehicle racetrack is not a commercial recreation facility, and that the process followed by the Department was not in compliance with the Code.

### *Recent actions by the Kent County Levy Court do not indicate that a "vehicle racetrack" falls within the definition of a "commercial recreational facility"*

The Board finds additional support for its conclusion that a "vehicle racetrack" falls within the definition of "commercial recreation facility" in recent actions undertaken by the Levy Court. A proposed ordinance would "(1) create a new conditional use called "motorsports"; (2) include racetrack and racing operations

within the definition of "motorsports"; (3) specifically exclude "motorsports" from the definition of "commercial recreation facilities"; and (4) thereby prohibit racetracks and racing operations in the BG Zoning District."[57] The Board found that the proposed ordinance "constitute[d] evidence that a "vehicle racetrack" does qualify as a "commercial recreation facility" under the present Code."

Proposed legislation has no place in statutory construction. Before being adopted, legislation is open to free and vigorous debate. As proposed legislation is debated, minds can be changed. The Board cannot determine the outcome of the proposed ordinance, nor divine the rationale behind the introduction of the ordinance. For these reasons, the proposed ordinance is not evidence supporting the proposition that a "vehicle racetrack" falls within the definition of "commercial recreation facility."

## IV. CONCLUSION

The Board's holding that a vehicle racetrack is a commercial recreation facility has broad implications. There are a number of uses that are not specifically listed in the Code, and the procedures followed by the Department and viewed with favor by the Board would lead to results not consistent with the Code when viewed as a harmonious whole. For instance, the decision allows vehicle racetracks as a permitted use in the BG District. Although Mr. Faison has stated that he will limit the types of cars allowed to race on the track, be open one day per week, and will implement measures to reduce any adverse impacts on neighboring properties, not

---

[57] *Notice of Decision, supra* note 5, at 8.

every property owner may be so accommodating. Limitations found in section 205-332 for commercial recreation facilities apply only to zoning districts which list commercial recreational facilities as a conditional use. The Board's decision sets a precedent that would allow vehicle racetracks as a permitted use in the BG District. This would allow vehicle racetracks to operate in the BG District even though the types of cars being raced are not limited to four cylinders, even though the racetrack is open every day of the week, and even though the owner may not be inclined to limit adverse effects. When one considers the stated purpose of chapter 205, the Board's decision does not give effect to the intent of the Levy Court.

After careful consideration of the Board's decision, the briefs submitted by the parties, and the Kent County Code, the Court finds that the term "Racetracks" encompasses vehicle racetracks, that the term "commercial recreation facility" does not encompass vehicle racetracks, and that results from the SIC manual must be compared to the stated purpose of the zoning district before a non-listed use is allowed. Based on these findings, the decision of the Kent County Board of Adjustment is **REVERSED**.

IT IS SO ORDERED.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh

28