# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MAD INVESTORS GRMD, LLC AND ) 
MAD INVESTORS GRPA, LLC, )
        )
       Plaintiff, )
        )
       v. ) C.A. No. 2020-0589-MTZ
        )
GR COMPANIES, INC., )
        )
       Defendant. )

## MEMORANDUM OPINION

Date Submitted: September 24, 2020
Date Decided: October 28, 2020

Michael J. Barry, Christine M. Mackintosh, Kelly L. Tucker, and Vivek Upadhya, GRANT & EISENHOFER P.A., Wilmington, Delaware, *Attorneys for Plaintiffs.*

Blake Rohrbacher, Kevin M. Gallagher, and Elizabeth A. Heise, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Jason C. Vigna and Brian L. Muldrew, KATTEN MUCHIN ROSENMAN LLP, New York, New York, *Attorneys for Defendant.*

**ZURN, Vice Chancellor.**

In this books and records action, stockholders of a Delaware corporation seek to investigate suspected breaches of fiduciary duties and conflicts of interest under the familiar standard of 8 *Del. C.* § 220. Concerned about the board's motivations for renegotiating the company's merger agreement, the stockholders filed their complaint at 5:03 p.m. on the last day of Section 220(c)'s five-business-day response period. The defendants moved to dismiss that complaint for failure to state a claim, and the stockholders moved to supplement their complaint.

The parties dispute whether the five-business-day response period lapsed before the stockholders filed their complaint. I conclude that the statutory response period runs until midnight on the fifth business day following the demand. Because the company did not affirmatively refuse the stockholders' demand, and the complaint was filed before the waiting period lapsed, the stockholders prematurely filed their complaint. The response period is jurisdictional. Accordingly, the stockholders' complaint is dismissed with prejudice, and the motion to supplement the stockholders' complaint is denied.

## I.  BACKGROUND[1]

On July 16, 2020, Plaintiffs MaD Investors GRMD, LLC and MaD Investors GRPA, LLC (together, "Plaintiffs") filed a Verified Complaint (the "Complaint")

---

[1] I draw the facts from the plaintiff's Verified Complaint (the "Complaint"), Docket Item ("D.I.") 1 [hereinafter "Compl."], and the exhibits attached to it.

1

against Defendant GR Companies, Inc. (the "Company" or "Grassroots") to compel inspection of books and records pursuant to 8 *Del. C.* § 220.[2] Plaintiffs have been shareholders of Grassroots since January 2019.[3] According to Plaintiffs, they seek books and records for several purposes, including investigating possible breaches of fiduciary duty by Grassroots officers and directors in connection with the Company's proposed acquisition by Curaleaf Holdings, Inc. ("Curaleaf").[4]

The details of that acquisition are not relevant to the immediate dispute between the parties. For now, it is enough to say that Plaintiffs believe conflicted Grassroots insiders renegotiated the acquisition to line their own pockets at the expense of stockholders, and the Company's board failed to take protective measures against such conflicts.[5] Grassroots and Curaleaf entered into an amended merger agreement (the "Amended Merger Agreement") memorializing the renegotiated terms on June 22, 2020.[6]

Grassroots announced the Amended Merger Agreement via a June 26 proxy statement (the "Proxy Statement").[7] The stockholder vote on the merger was

---

[2] Compl. ¶ 1; D.I. 6 ¶ 6.

[3] Compl. ¶ 5.

[4] *Id.* ¶¶ 1, 3, 7; D.I. 6 ¶ 3.

[5] Compl. ¶ 15.

[6] *Id.* ¶ 10.

[7] *Id.* ¶ 4.

scheduled to take place twenty days later, on July 16.[8]  Plaintiffs allege that the disclosures set forth in the Proxy Statement are insufficient and failed to inform Plaintiffs about crucial aspects of the merger and renegotiation.[9]

On July 9, Plaintiffs served on the Company's registered agent a Section 220 demand (the "Demand") to compel inspection of the Company's books and records.[10]  On July 15, Plaintiffs filed a complaint based on the Demand.[11]  Plaintiffs promptly dismissed that complaint, recognizing it was premature under Section 220(c).[12]  On July 16 at 5:03 p.m., Plaintiffs filed the Complaint in this action.[13]

On August 3, the Company filed a motion to dismiss (the "Motion to Dismiss") asserting Plaintiffs failed to comply with Section 220's requirement to wait five business days after the company's receipt of the demand to file suit.[14]  On September 15, Plaintiffs filed a cross-motion for leave to supplement the Complaint (the "Leave Motion").[15]  The parties briefed both motions,[16] and I heard oral

---

[8] *Id.*

[9] *Id.* ¶¶ 17–22.

[10] Compl. ¶¶ 28–29; *see also* Compl. Exs. A & B.

[11] D.I. 6 ¶ 5.

[12] *Id.* ¶ 6.

[13] D.I. 11 ¶ 16.

[14] D.I. 6.

[15] D.I. 10.

[16] D.I. 11, 13, 16.

argument on September 24.[17]  For the following reasons, the Motion to Dismiss is granted and the Leave Motion is denied.

## II.    ANALYSIS

"Because Section 220 actions are summary proceedings, motions to dismiss are disfavored. In this case, however, the Company filed a targeted motion that articulated objective and easily adjudicated grounds for dismissal. I therefore approved a briefing schedule for the motion."[18]  "The standard for dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted is well established."[19]  The Court accepts all well-pled allegations as true and draws all reasonable inferences in favor of the non-movant.[20]  However, the Court "need not accept conclusory allegations as true, nor should inferences be drawn unless they are truly reasonable."[21]

---

[17] Citations to the transcript of that argument are styled "Tr."

[18] *Katz v. Visionsense Corp.*, 2018 WL 3953765, at *1 (Del. Ch. Aug. 16, 2018) (internal citations omitted); *accord Cent. Laborers Pension Fund v. News Corp.*, 45 A.3d 139, 140 (Del. 2012) (affirming dismissal of Section 220 demand for failure to comply with statutory requirements).

[19] *Feldman v. Cutaia*, 2006 WL 920420, at *7 (Del. Ch. Apr. 5, 2006).

[20] *Sheldon v. Pinto Tech. Ventures, L.P.*, 220 A.3d 245, 251 (Del. 2019).

[21] *Id.*

## A.    Plaintiffs Failed To Wait Five Business Days To Sue.

"Delaware courts require strict adherence to the section 220 inspection demand procedural requirements."[22]  Section 220(c) provides:

> If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a stockholder or attorney or other agent acting for the stockholder pursuant to subsection (b) of this section or does not reply to the demand within 5 business days after the demand has been made, the stockholder may apply to the Court of Chancery for an order to compel such inspection.[23]

Thus, stockholders may not file a lawsuit until either the five-day response period has lapsed, or the corporation has affirmatively refused the demand before the end of the response period.[24]  "This Court has enforced the statutory response period strictly and dismissed prematurely filed complaints."[25]  "The obligation to wait out the response period is jurisdictional."[26]

Plaintiffs argue the Complaint complied with the statutory response period for two reasons; both are unavailing.  First, Plaintiffs contend that on July 15, two days before the merger was scheduled to close, the Company requested an extension to respond and informed the Plaintiffs that Grassroots would not respond until July

---

[22] *Katz*, 2018 WL 3953765, at *1 (quoting *Cent. Laborers Pension Fund*, 45 A.3d at 145).

[23] 8 *Del. C.* § 220(c).

[24] *Id.*

[25] *Katz*, 2018 WL 3953765, at *1.

[26] *Id.* at *2.

5

20.[27] Plaintiffs supplied this information not in their Complaint, but rather in their counsel's declaration in opposition to the Motion to Dismiss.[28] Plaintiffs argue that by requesting an extension, the Company refused the Demand within the response period, which statutorily freed Plaintiffs to file a complaint.[29]

As an initial matter, the Court cannot consider the Company's request for an extension. "On a motion to dismiss, the Court may consider documents that are 'integral' to the complaint, but documents outside the pleadings may be considered only in 'particular instances and for carefully limited purposes'" consistent with judicial notice principles.[30] Plaintiffs did not allege the Company's request for an extension in their Complaint; rather, Plaintiffs described the request for extension for the first time in counsel's unsworn declaration opposing the Motion to Dismiss.[31] Plaintiffs' counsel's factual assertions are not integral to the complaint, and the

---

[27] D.I. 11, Unsworn Decl. of Kelly L. Tucker, Esq. [hereinafter "Tucker Decl."] ¶ 6.

[28] *See* Tucker Decl. ¶¶ 6–7.

[29] D.I. 11 ¶¶ 3–4.

[30] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004).

[31] *See* Tucker Decl. To be clear, I do not have reason to doubt the veracity of a declaration submitted by a member of the Delaware Bar.

The Tucker Declaration also provides for the first time that at 11:13 p.m. on July 16, after Plaintiffs filed their Complaint, the Company responded to Plaintiffs, largely rejecting the Demand and refusing to provide the requested documents because the Demand lacked a proper purpose and was otherwise flawed. *Id*. ¶¶ 10–11.

contents of the declaration are not found in any public filing.[32]  The Court cannot consider them.[33]

Even if the Court could consider the Company's request for extension, it would not qualify as a refusal under Section 220(c).  Only "affirmative action" by the corporation that reflects a denial of the stockholder's request constitutes a refusal.[34]  For example, failing to respond to a stockholder's request for a meet-and-confer conference does not constitute a refusal; filing affirmative litigation seeking to avoid producing the material the stockholder sought is a refusal.[35]  While Plaintiffs submit that the Company requested an extension on the response period, they do not indicate that the request stated or implied any refusal to respond to the Demand.[36]  The Company's request for an extension in no way "reflect[s] a denial of [Plaintiffs'] request."[37]  Indeed, if a request for an extension could constitute a constructive

---

[32] *Wal-Mart*, 860 A.2d at 320.

[33] Plaintiffs argue this procedural blind spot supports their Motion to Supplement, contending allowing a supplemented complaint would permit the Court to consider the Company's request for an extension.  D.I. 16 ¶ 1.  As I explain below, the Motion to Supplement must be denied because the Court lacks jurisdiction to consider it.  Further, Plaintiffs' proffered supplemented complaint does not contain any allegations about the request for extension; the only new allegations concern the post-filing refusal. *See* D.I. 10; *see also* D.I. 11, Ex. B ¶¶ 5, 37, 42.

[34] *Katz*, 2018 WL 3953765, at *2.

[35] *Id.* (considering *Odyssey P'rs v. Trans World Corp.*, 1983 WL 18011, at *1 (Del. Ch. Mar. 29, 1983)).

[36] *See* D.I. 11.

[37] *See Katz*, 2018 WL 3953765, at *2.

refusal, it would defeat the purpose of asking for an extension. There is no basis to conclude the Company refused the Demand before Plaintiffs filed the Complaint.

Second, Plaintiffs argue that the Complaint should not be dismissed because it was in fact filed after the response period expired.[38] According to Plaintiffs, the response period ended at 5:00 p.m., not midnight, on the fifth business day following service of the Demand.[39] Plaintiffs point to court rules setting 5:00 p.m. as the deadline for court filings (other than complaints) and trial days.[40] Plaintiffs also point to Section 220(b), which provides stockholders the opportunity to inspect books and records "during the usual hours for business,"[41] and conclude that business days under Section 220 must end when business hours end.

The Company argues that Section 220(c) refers to business days, not business hours.[42] The Company notes that federal regulations define a business day as "any day, other than Saturday, Sunday, or a Federal holiday, and shall consist of the time period from 12:01 a.m. through 12:00 midnight Eastern Time."[43] The Company also

---

[38] D.I. 11 ¶¶ 17, 22.

[39] *Id.* ¶ 19.

[40] *Id.* ¶¶ 19–22 (citing Ct. Ch. R. 79.2, and also citing *In re Work Life Balance Recommendations and the Adoption of New Filing Deadlines for All Delaware Courts*, at 2–3 (Del. July 18, 2018) (ORDER), *available at* https://courts.delaware.gov/rules/pdf/Work-Life-Balance-FINAL-ORDER.pdf).

[41] *Id.* ¶ 20; 8 *Del. C.* § 220(b).

[42] D.I. 13, at 9.

[43] 17 C.F.R. § 240.13e-4(a)(3) (2020).

points to various Delaware statutes that define "business day" as weekdays and non-holidays, and do not limit the business day to a period shorter than 24 hours.[44]

I agree with the Company. Whether the Section 220 response period expires at 5:00 p.m. or midnight on the fifth business day following a demand is an issue of first impression. When interpreting an undefined statutory term, I "must give the term its commonly accepted meaning."[45] It is well-settled under Delaware law that courts may rely on dictionaries "for assistance in determining the plain meaning of undefined terms."[46] Black's Law Dictionary defines "business day" as "[a] day that most institutions are open for business . . . a day on which banks and major stock exchanges are open, excluding Saturdays and Sundays."[47] Other modern dictionaries provide similar definitions; the Merriam-Webster Dictionary defines "business day" as "a day when most businesses are open: a weekday that is not a

---

[44] D.I. 13 at 7–8; *see, e.g.,* 5 *Del. C.* § 961(2) ("'Business day' means, with respect to rescission under § 976 of this title, all calendar *days* except Sundays and legal public holidays.") (emphasis added)); 6 *Del. C.* § 2802(2) ("'Business day' means any day except Sunday or a legal holiday."); 13 *Del. C.* § 509 ("[T]he term 'business day' means a day on which state offices are open for regular business."); 18 *Del. C.* § 5933(d) ("'[B]usiness day' means a day other than a Saturday, Sunday or any day on which either the New York Stock Exchange or the Federal Reserve Bank of New York is closed."); 30 *Del. C.* § 1156A(e)(1) ("'Business day' means a day on which state offices are open for regular business.").

[45] *Freeman v. X-Ray Assocs., P.A.*, 3 A.3d 224, 227 (Del. 2010).

[46] *Id.* at 227–28.

[47] *Day*, *Black's Law Dictionary* (11th ed. 2019); *see Kelly v. Blum*, 2010 WL 629850, at *8 n.49 (Del. Ch. Feb. 24, 2010).

holiday."[48]  These definitions indicate that the term "business day" refers to a full calendar day, not a subset of hours.

This interpretation is harmonious with the rest of the Delaware Code.  When determining the meaning of an undefined term, Delaware courts may look to that term's definition in other provisions of the Delaware Code for guidance.[49]  The General Assembly has consistently defined "business day" to mean any *day* except weekends and holidays in at least five separate chapters of the Delaware Code.[50]  I could find no definition of "business day" under the Delaware Code that is limited to business hours, and Plaintiffs provide none.  Plaintiffs' sources do not define "business day," but rather impose a deadline for court filings and trial days.[51]  I conclude the General Assembly has used the term "business day" consistently

---

[48]  *Business Day*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/business%20day (last visited Oct. 27, 2020).

[49]  *Sandt v. Del. Solid Waste Auth.*, 640 A.2d 1030, 1033-34 (Del. 1994) (looking to other provisions and titles of the Delaware Code to ascertain the General Assembly's intent for the meaning of a term in a particular Act); *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) [hereinafter *Reading Law*] (determining that, under the presumption of consistent usage, legislature's consistent use of a term between statutes is persuasive evidence that the term has the same meaning when undefined).

[50]  *See* 5 *Del. C.* § 961(2); 6 *Del. C.* § 2802(2); 13 *Del. C.* § 509; 18 *Del. C.* § 5933(d); 30 *Del. C.* § 1156A(e)(1).

[51]  *See* Ct. Ch. R. 79.2; *see also Hours & Locations, Del. Cts.*, https://courts.delaware.gov/locations/chancery_nc.aspx.

throughout the Delaware Code, including Section 220(c), to mean a twenty-four-hour day other than weekends and holidays.

I also interpret Section 220(c)'s term "business day" to have a different meaning than Section 220(b)'s term "usual hours for business." When the legislature uses a similar but different term or phrase in a statute, the concept of meaningful variation in statutory interpretation suggests that the legislature intended for that term to have a distinct meaning.[52] To give meaning to the legislature's variation in terms, "business day" must mean something different than "usual hours for business."

Thus, I conclude Section 220(c)'s response period ends at 12:00 a.m. after the fifth business day. Here, Plaintiffs' response period did not terminate until 12:00 a.m. on July 17. The Complaint, filed at 5:13 p.m. on July 16, was filed too early, and must be dismissed.

## B. Plaintiffs' Leave Motion Must Be Denied.

Plaintiffs request leave to supplement the Complaint.[53] But as stated succinctly in *Katz v. Visionsense Corp.*, the five-day response period is

---

[52] *Freeman*, 3 A.3d at 229 (determining that the terms "surgery" and "surgical procedure must have different meanings because "we cannot overlook the legislature's use of different terms . . . [ because to do so would be] at odds with the commonly accepted rule of statutory interpretation that requires us to give each distinctive term an independent meaning."); *see Reading Law* at 170.

[53] D.I. 10. Plaintiffs seek to add allegations about the Company's refusal of the Demand at 11:13 p.m. on July 16, 2020. D.I. 10, Ex. B, ¶ 5. It is not clear that these additional

jurisdictional.[54]  Here, as in *Katz*, this Court must enforce the "statutory response period strictly," and so cannot entertain Plaintiffs' request to cure the deficiencies of their Complaint.[55]

Like the plaintiff in *Katz*, Plaintiffs here argue that the equities of the case compel leniency because since filing this suit, the Company has completed a merger that extinguished Plaintiffs' standing as a stockholder, precluding restarting the process with a curative demand.[56]  Following *Katz*, I conclude Section 220(c) offers

allegations would rescue Plaintiffs from the five-day response period, as the Complaint was still filed before that refusal and before the response period ran.

[54] *Katz*, 2018 WL 3953765, at *2; *see Gay v. Cordon Int'l Corp.*, 1978 WL 2491, at *3 (Del. Ch. Mar. 31, 1978) (holding that plaintiff's second demand must comply with the statutory response period); *Odyssey P'rs*, 1983 WL 18011, at *1 (holding that the court had jurisdiction over the suit because it was not filed prematurely); *Levy v. Recognition Equip. Co., Inc.*, 1982 WL 17877 at *1 (Del. Ch. Feb. 26, 1982) (stating that the court did not have jurisdiction over the suit until the statutory response period lapsed); *Weisman v. Plains Res., Inc.*, 1989 WL 57714, at *1 (Del. Ch. June 1, 1989) ("The five business day requirement has been interpreted to be a jurisdictional prerequisite.").

Against this great weight of authority, Plaintiffs cite *Frank v. Libco Corp.*, 1992 WL 364751, at *2–3 (Del. Ch. Dec. 8, 1992) for the proposition that the response period is not jurisdictional.  While *Frank* does contain language to that effect, the *Frank* Court ultimately dismissed the plaintiff's complaint because it did not comply with the statutory waiting period, stating the Court could not "eviscerate the statutory five business day waiting period by ignoring it." *Id.* at *3.  For support, *Frank* pointed to *Gay*, in which the motion to supplement was brought five business days after a second, proper demand was submitted, and *Odyssey Partners*, which tracked Section 220(c)'s language permitting the stockholder to sue before five business days elapsed where the corporation refused the demand first. *Id.* at *2–3 (citing *Gay*, 1978 WL 2491, at *1, and *Odyssey P'rs*, 1983 WL 18011). *Frank*'s outcome, as reconciled by *Katz*, supports the conclusion that the response period is jurisdictional.

[55] 2018 WL 3953765, at *1; *see also Frank*, 1992 WL 364751, at *3.

[56] 2018 WL 3953765, at *3.  The merger between Grassroots and Curaleaf closed on July 23. *See* Tr. 5:17– 20.  At that point, the merger extinguished Plaintiffs' standing under

12

no equitable safe harbor for Plaintiffs.[57] "Delaware courts require strict adherence to the section 220 inspection demand procedural requirements."[58] Plaintiffs' failure to comply with Section 220(c)'s five-day response period deprives this Court of jurisdiction over Plaintiffs' Complaint and request to supplement it.

## III.  CONCLUSION

The Motion to Dismiss is GRANTED, and the Complaint is hereby dismissed with prejudice.  The Leave Motion is DENIED.

---

Section 220.  *See Weingarten v. Monster Worldwide, Inc.*, 2017 WL 752179, at *3 (Del. Ch. Feb. 27, 2017) (holding that plaintiff lost standing to file complaint under Section 220 after merger was consummated and extinguished plaintiff's stockholder status).

[57] 2018 WL 3953765, at *3.

[58] *Id.* at *1–2 (internal quotes omitted).