**Jackeline Tielleman THOMAS, as Successor Administratrix of the Estate of Glenn David Thomas, Plaintiff Below, Appellant,**

**v.**

**ST. FRANCIS HOSPITAL, INC., a hospital corporation of the State of Delaware, Nurse Anesthetist Raymond, Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted April 14, 1982.

Decided June 22, 1982.

Bayard Marin (Argued) of Marin & Hudson, Wilmington, for plaintiff-appellant.

Jane R. Roth (Argued) of Richards, Layton & Finger, Wilmington, for defendants-appellees.

Before McNEILLY, QUILLEN and HORSEY, JJ.

QUILLEN, Justice:

On June 18, 1976, Glenn D. Thomas, a healthy young man of eighteen years, was taken to the operating room of the St. Francis Hospital in Wilmington for a minor surgical procedure to his right thigh. Pursuant to the instructions of the surgeon, a general anesthesia, pentothal, was administered by the defendant James Raymond, a nurse anesthetist employed by the Hospital. For reasons that are disputed, Mr. Thomas had a reaction and died approximately four hours later.

A medical malpractice suit was brought by Mr. Thomas' Administrator against the anesthesiologist, his professional corporation, Mr. Raymond, and the Hospital. A settlement was reached between the anesthesiologist and his professional corporation and the plaintiff. Summary judgment was granted in the Superior Court in favor of the defendants Raymond and the Hospital. Plaintiff brought this appeal.

There are three questions on appeal. Did the Superior Court err in excluding the testimony of plaintiff's medical expert? Are there factual issues as to liability which preclude summary judgment? Is *res ipsa loquitur* applicable?

With regard to the qualification of the medical expert, Delaware has a statute, 18 *Del.C.* § 6854, recently amended, which reads:

"§ 6854. Expert witness.

(a) No person shall be competent to give expert medical testimony as to applicable standards of skill and care unless such person is familiar with that degree of skill ordinarily employed in the community or locality where the alleged malpractice occurred, under similar circumstances, by members of the profession practiced by the health care provider; provided, however, that any such expert witness need not be licensed in the State.

(b) Any physician who has been in the active practice of medicine or surgery for at least the past 5 years and who currently practices in the State or within a state contiguous to the State and within a radius of 75 miles of the Capitol of the State shall be presumed to be competent to give expert medical testimony as to applicable standards of skill and care, if it shall be established that the degree of skill and care required of the expert in the locality where the expert practices or teaches is of the same or equivalent standard as the skill and care employed in the community or locality where the alleged malpractice occurred. (60 Del.Laws, c. 373, § 1; 62 Del.Laws, c. 274, § 1.)"

There can be no question about the professional qualifications of Dr. Mario Tron-

celliti, the plaintiff's expert. He graduated from Jefferson Medical College in 1941, completed an anesthesiology residency at the University of Pennsylvania from 1946 to 1948, became Board certified in 1951, has been Director of Anesthesiology at the Pennsylvania Hospital since 1951, and has taught medical students for many years, including a current position at the University of Pennsylvania.

But the Superior Court excluded Dr. Troncelliti's testimony because he was "incapable of establishing that the standards employed in [Philadelphia and Wilmington] are the same or equivalent since he has not demonstrated a personal knowledge of practice in Wilmington." Since the Court was not satisfied that other evidence provided the link, the testimony was excluded under the statute.

The record on the point is sparse but somewhat confusing. Dr. Troncelliti did testify in conclusional terms that the standards involved were national. Compare *Butler v. Alatur*, Del.Supr., 419 A.2d 938 (1980). But the matter was not pressed and indeed plaintiff's former counsel said Dr. Troncelliti was not being offered on the issue of standard of care. No further effort was made to fill the gap. Thus, the plaintiff's case on the point is indeed weak.

Frankly it does seem to us that the medical standards here involved, as distinct from administrative processing, are probably national. But we hesitate to say so on this feeble record. Moreover, we cannot say the Trial Judge's view of the qualification of the witness, basically a trial court function, is unreasonable and we do not want to set a standard so low that it will eradicate a statute enacted by the General Assembly. But, having said all that, we are left with an overwhelming feeling that this case, wherein a healthy young man of eighteen years died, should not be decided on the absence of evidence relating standards of Philadelphia's practice to Wilmington's when that absence was apparently produced solely by a tactical decision of former counsel. The case, at least at this time, should not be permitted to turn on this technical deficiency.

■ Thus, we find it was an abuse of discretion in this death case for the Superior Court to grant the summary judgment motion on this insufficient record as to the expert witness' qualifications. We recognize that delinquencies in presenting the case on behalf of the plaintiff apparently caused the insufficiency and that there was plenty of time for the plaintiff to fill the gap. Obviously, counsel cannot count on the Court to be routinely responsible for counsel's shortcomings and the Court must usually take the record counsel provides. But occasionally under summary judgment review, the motion should be denied "if, upon an examination of all the facts, it seems desirable to inquire thoroughly into them in order to clarify the application of the law to the circumstances." *Ebersole v. Lowengrub*, Del.Supr., 180 A.2d 467, 470 (1962). This is such an occasion. In this instance, given the gravity of the harm and the particular custodial circumstances leading to death, we are of the strong view that the Court should have pinpointed the technical deficiency and offered the plaintiff a final opportunity to correct it before granting summary judgment due to a lack of a qualified expert.

■ If the testimony of Dr. Troncelliti is permitted, it would appear that certain allegations of the complaint may have sufficient support to require a trial. In particular, the allegations contained in paragraph 7(g), (h), (i), (j) and (n) are, in the plaintiff's view, supported by evidence. We agree that, when matters of timing of treatment are considered, the plaintiff should not be precluded by summary judgment at this time. Since the record presumably will be enlarged, we do not, however, foreclose a further pretrial application if counsel and the Superior Court deem it advisable. As to all other allegations, the summary judgment ruling stands and they are out of the case.

■ Finally, as to *res ipsa loquitur*, we agree with the Superior Court that the doctrine "is not applicable in malpractice ac-

tions in which the only proof is the fact that the treatment of the patient terminated with poor results", even if the results are highly unusual. Unfortunately people in hospitals do die due to traits peculiar to them. It is therefore not fair to infer death is the result of negligent medical treatment. No *res ipsa* inference of negligence is warranted under the facts here. *DiFilippo v. Preston*, Del.Supr., 173 A.2d 333, 338 (1961); *Mitchell v. Atkins*, Del.Supr., 178 A. 593, 595 (1935). Summary judgment as to the *res ipsa* allegations was proper. Our analysis in traditional *res ipsa* terms on this point makes it unnecessary to consider the recently enacted 18 *Del.C.* § 6853.*

For the reasons stated above, the decision of the Superior Court granting summary judgment for the defendants Raymond and St. Francis Hospital is reversed and the case is remanded for further proceedings consistent with this opinion.

---

* The statute reads:

"§ 6853. Requirement of expert medical testimony.

No liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury or death, except that such expert medical testimony shall not be required if a malpractice review panel has found negligence to have occurred and to have caused the alleged personal injury or death and the opinion of such panel is admitted into evidence; provided, however, that a rebuttable inference that personal injury or death was caused by negligence shall arise where evidence is presented that the personal injury or death occurred in any 1 or more of the following circumstances: (1) A foreign object was unintentionally left within the body of the patient following surgery; (2) an explosion or fire originating in a substance used in treatment occurred in the course of treatment; or (3) a surgical procedure was performed on the wrong patient or the wrong organ, limb or part of the patient's body. Except as otherwise provided herein, there shall be no inference or presumption of negligence on the part of a health care provider. (60 Del.Laws, c. 373, § 1.)"