**Marguerite F. FREEMAN, Appellant,**

v.

**X–RAY ASSOCIATES, P.A. and Randall W. Ryan, M.D., Appellees.**

**No. 453, 2009.**

Supreme Court of Delaware.

Submitted: May 12, 2010.
Decided: July 8, 2010.

---

L. Vincent Ramunno, Ramunno & Ramunno, P.A., Wilmington, Delaware, for appellant.

Bradley J. Goewert, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware, for appellees.

Before STEELE, Chief Justice,
HOLLAND and RIDGELY, Justices.

STEELE, Chief Justice:

In this medical malpractice dispute, Marguerite F. Freeman appeals from a directed verdict granted in favor of Dr. Randall Ryan and X–Ray Associates, P.A. Freeman contends that 18 *Del. C.* § 6853 creates a presumption of negligence when a surgical procedure is performed on the wrong organ, which may be rebutted but only before a jury. In response, Dr. Ryan asserts that Freeman's liver biopsy was not a surgical procedure on the wrong organ; therefore, 18 *Del. C.* § 6853 does not apply. Dr. Ryan further contends that even if the statute applies, the defense conclusively rebutted the presumption and that no reasonable juror could conclude otherwise. We disagree. We conclude that the trial judge erroneously granted a motion for a directed verdict in the defendant's favor. A jury should decide whether Dr. Ryan conclusively rebutted the statutorily mandated inference of negligence; therefore, we reverse and remand.

## Factual Background and Procedural History

On October 5, 2006, Dr. Randall W. Ryan and X–Ray Associates, P.A. intended to biopsy Marguerite F. Freeman's liver. Using an ultrasound unit, which acts as a conduit for the biopsy gun that physically excises and collects the tissue sample, Dr. Ryan believed he had guided the tip of a needle into Freeman's liver and removed several tissue samples. Several months later, Dr. Ali, the doctor who referred Freeman to Dr. Ryan, informed Dr. Ryan that the pathology report indicated that there was no liver tissue present in the samples; rather, the four samples consisted of kidney or renal tissue.

On April 15, 2008, Freeman filed suit against Dr. Ryan and X–Ray Associates contending that a negligently performed liver biopsy injured her. During the pretrial proceedings, Freeman never obtained an expert. At the close of discovery, Freeman filed a motion seeking leave to obtain an expert. Dr. Ryan and X–Ray Associates opposed the motion. Freeman then withdrew the motion. At trial, Freeman called two witnesses—Dr. Ryan and herself. Presumably relying on an exception in 18 *Del. C.* § 6853(e)(3) to a requirement to present expert testimony on the standard of care, Freeman presented no expert medical testimony. At the end of Freeman's case, the defendants moved for a directed verdict on the grounds that Freeman had failed to establish a breach of the applicable standard of care—and as a consequence had offered no basis for a claim of professional negligence. The trial judge reserved decision until after hearing Dr. Ryan's evidence.

The defense presented one witness, David M. Widlus, M.D., a board-certified interventional radiologist. Dr. Widlus, testifying as an expert, stated that a needle could migrate during a biopsy for various reasons, including a patient's breathing. Dr. Widlus also noted that there is a small area of the liver, the Reidel's lobe, where a small migration could result in the recovery of non-target tissue. Finally, Dr. Widlus opined that Dr. Ryan's actions did not fall below the applicable standard of care.

At the conclusion of Dr. Widlus's testimony, the trial judge revisited the motion.

The trial judge found that one could consider the biopsy to be a surgical procedure for purposes of 18 *Del. C.* § 6853; but the evidence established that the biopsy was not a surgical procedure *performed on the wrong organ.* Therefore, 18 *Del. C.* § 6853(e)(3) did not apply. The trial judge further held that even if the statute applied, the defense presented sufficient evidence to rebut the presumption. This appeal followed.

## Claims on Appeal

The parties' differing statutory interpretations turn on three issues. The first two issues concern whether (1) a needle biopsy is considered a surgical procedure; and, (2) removing kidney or renal tissue when intending to excise liver tissue constitutes a procedure on the wrong organ creating a presumption of negligence and rendering a medical expert unnecessary under 18 *Del. C.* § 6853(e)(3). The final issue concerns the degree to which a defendant must rebut the statutory presumption when and if it comes into play.

## Standard of Review

■ Questions of law involving statutory interpretation are reviewable *de novo.*[1]

## Discussion

### I. Meaning of a Surgical Procedure

■ We first consider Freeman's contention that a liver biopsy is a surgical procedure. It is undisputed that Freeman failed to obtain a medical expert to testify about the applicable standard of care and breach thereof; rather, Freeman sought to invoke a statutory exception that would render an expert's opinion unnecessary. The resolution of Freeman's contention presents a matter of first impression for us. The Healthcare Medical Negligence Insurance and Litigation Statute found at 18 *Del. C.* § 6853(e)(3), provides that in order to maintain a healthcare negligence lawsuit, the plaintiff must demonstrate medical malpractice through expert medical testimony; unless, a medical negligence review panel finds negligence or if one of the below exceptions is present, each of which creates a rebuttable inference of negligence:

(1) A foreign object was unintentionally left within the body of the patient following surgery;

(2) An explosion or fire originating in a substance used in treatment occurred in the course of treatment; or

(3) A surgical procedure was performed on the wrong patient or the wrong organ, limb or part of the patient's body.

■ We must give effect to the legislature's intent by ascertaining the plain meaning of the language used.[2] Where, as in this case, the legislature has not defined the term "surgical procedure," we must give the term its commonly accepted meaning.[3] Because dictionaries are routine reference sources that reasonable persons use to determine the ordinary meaning of words, we often rely on them for assistance in determining the plain mean-

1. *Dambro v. Meyer,* 974 A.2d 121, 129 (Del. 2009).

2. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* 492 A.2d 1242, 1246 (Del.1985).

3. 18 *Del. C.* § 6850 (imply a meaning that is consistent with common law for any legal term or word of art used in this chapter, not otherwise defined); *E.I. Du Pont De Nemours & Co. v. Clark,* 88 A.2d 436, 438 (Del.1952); *Moore v. Chrysler Corp.,* 233 A.2d 53, 55 (Del. 1967); *Bailey v. State,* 450 A.2d 400, 402 (Del.1982).

ing of undefined terms.[4]

In attempts to give the phrase, surgical procedure, its commonly accepted meaning, the parties offer three definitions from two dictionaries. Freeman compares a surgical procedure to a surgery and asks us to adopt the following definition: "a surgical operation or procedure, especially one involving the removal or replacement of a diseased organ or tissue."[5] Freeman further contends that because a biopsy involves "the removal and examination of a sample of tissue from a living body for diagnostic purposes," it falls squarely within the definition of a surgery.[6]

Although surgery and surgical procedure appear to be linguistically similar, Dr. Ryan contends that a surgical procedure is more comparable to an operation, which is "[a] surgical procedure for remedying an injury, ailment, defect, or dysfunction,"[7] or "a procedure performed on a living body usually with instruments for the repair of damage or the restoration of health and especially one that involves incision, excision, or suturing."[8] Dr. Ryan asserts that because there is neither an incision involved, nor any removal of diseased tissue

for the purposes of repairing damage or restoring health, the term "surgical procedure" cannot include a biopsy. Rather, Dr. Ryan claims a biopsy is more analogous to drawing blood: a minimally invasive, non-surgical procedure during which a physician inserts a needle into a part of the body and removes a sample for diagnostic purposes.[9]

Considering the three definitions advanced by the parties here, one could reasonably argue that a surgical procedure may broadly encompass any procedure that remedies an injury or ailment; narrowly include procedures that involve incisions, excisions, or suturing; or only covers the removal, or replacement of a diseased organ or tissue. The lack of consistency among the proffered definitions suggests that the dictionary options do not reveal an "ordinary meaning" that is commonly accepted.[10] We, therefore, may refer to other sources.[11] A common resource used in the healthcare industry is the American Medical Association's Current Procedural Terminology guide, which helps practitioners and insurers determine how to categorize medical procedures.[12] The CPT guide places liver

---

4. *See, e.g., Lorillard Tobacco Co. v. Am. Legacy Found.,* 903 A.2d 728, 738–39 (Del.2006); *Northwestern Nat'l Ins. Co. v. Esmark, Inc.,* 672 A.2d 41, 43 (Del.1996); *Hibbert v. Hollywood Park, Inc.,* 457 A.2d 339, 343 n. 3 (Del. 1983).

5. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2004).

6. *Id.*

7. *Id.*

8. MERRIAM-WEBSTER'S MEDICAL DICTIONARY (Electronic ed. 2010).

9. Freeman also mistakenly points to Dr. Ryan's statement during trial, "you could call [a needle biopsy] a surgical procedure," to support her position. What Freeman characterizes as a concession is in actuality merely

semantics. Dr. Ryan later, during trial, explained his earlier statement:

> Attorney: [W]hen I use surgical procedure, we understand each other, correct, you know what I mean?
>
> Dr. Ryan: Maybe we don't, because as I explained, I consider surgery to be a larger procedure where an incision is made, things are sutured up and such. These are general terms, semantics and you can assign to it what you wish. I make a distinction between the two.

10. *Slingwine v. Indus. Accident Bd.,* 560 A.2d 998, 1000 (Del.1989).

11. *See Clark,* 88 A.2d at 438.

12. The American Medical Association first developed and published the CPT in 1966.

biopsies under the general heading, *Surgery—Digestive System—Liver—Incision*, which belies the classification of a liver biopsy as anything but a surgery.

The general rules of statutory interpretation lend further support to our conclusion that a liver biopsy is a surgical procedure. While neither party acknowledged that 18 *Del. C.* § 6853(e)(1) explicitly uses the term surgery and subsection (e)(3) uses the phrase, surgical procedure, we cannot overlook the legislature's use of different terms. If we were to consider the parties' proffered definitions of surgery and operation alone to determine what "surgical procedure" means, we would render the use of that phrase, superfluous. A redundant interpretation is at odds with the commonly accepted rule of statutory interpretation that requires us to give each distinctive term an independent meaning.[13] At least one reference defines "surgical" broadly: relating to, resulting from, or characteristic of a surgery.[14] That broad definition more than sufficiently encompasses the procedure of a liver biopsy and comports with the medical profession's pricing guide, the CPT. Accordingly, we hold that the liver biopsy performed on Freeman to have been a surgical procedure as contemplated by 18 *Del. C.* § 6853(e)(3).

## II. On the Wrong Organ?

■ The gist of Dr. Ryan's second argument is that although one could classify Freeman's liver biopsy as a surgical procedure; it is not a surgical procedure *performed on the wrong organ.* Specifically, Dr. Ryan contends that the unanticipated outcome of a procedure, including, as here, the recovery of kidney tissue instead of liver tissue, cannot constitute a surgical procedure on the wrong organ. To support his contention, Dr. Ryan relies primarily on *Williams v. Dyer.*[15] In *Williams,* the patient underwent a bilateral tubal coagulation. During the operation, the physician inadvertently burned the patient's bowel. The trial judge in *Williams* reasoned that "the term 'surgical procedure' inherently envelopes an element of intent" and concluded that because the physician did not intentionally burn the patient's bowel, he did not perform a surgical procedure on the wrong organ.[16] Therefore, the trial judge held that 18 *Del. C.* § 6853(e)(3) did not apply.

Applying the reasoning found in *Williams* to Freeman's biopsy, Dr. Ryan asserts that he intended to recover liver tissue but an inadvertent migration of the needle resulted in the recovery of kidney tissue. Dr. Ryan insists that we should not label the unintended consequences of an involuntary migration as a surgical procedure performed on the wrong organ. Dr. Ryan further asserts that during a kidney biopsy, a needle is placed into the kidney through the patient's back; while, the point of entry for a liver biopsy is through the patient's side. Given the different points of entry and the testimony that Dr. Ryan placed the needle through Freeman's side and not her back, Dr. Ryan claims the procedure could not have been a kidney biopsy by definition.

Freeman responds to Dr. Ryan's contentions by asserting that reading an element

**13.** *See Gen. Motors Corp. v. Burgess,* 545 A.2d 1186, 1191 (1988) (quoting *C & T Assocs., Inc. v. New Castle County,* 408 A.2d 27, 29 (Del.Ch.1979)).

**14.** MERRIAM-WEBSTER'S MEDICAL DICTIONARY (Electronic ed. 2010).

**15.** 1992 WL 240477 (Del.Super.Aug.12, 1992).

**16.** 1992 WL 240477 at *2.

of intent into the statute implies that to invoke 18 *Del. C.* § 6853(e)(3) successfully, a surgeon would have to commit an intentional tort by intentionally cutting off the wrong body part or by intentionally operating on the wrong organ. Freeman suggests that this interpretation is illogical and clearly contrary to the legislative intent found in the statute's plain language.

We find Freeman's argument more persuasive. What Dr. Ryan categorizes as a clear distinction between a liver biopsy and a kidney biopsy based on where a physician inserts a needle into a patient's body is merely semantics. Whether we call the retrieval of kidney tissue a kidney biopsy or not does not negate what happened here. Dr. Ryan inserted a biopsy gun into Freeman's body in order to retrieve tissue samples from Freeman's liver; therefore, he performed a surgical procedure. Because a pathology report later determined the retrieved samples consisted entirely of kidney tissue, Dr. Ryan accidentally inserted a biopsy gun into Freeman's kidney, unintentionally performing a surgical procedure on the wrong organ.

■ Does the statute contemplate excluding unintended results from the meaning of a surgical procedure? "[S]tatutory language, where possible, should be accorded its plain meaning."[17] Moreover, when a statute is clear and unambiguous there is no need for statutory interpretation.[18] Title Eighteen, Section 6853(e)(3) plainly states that a plaintiff need not provide a medical expert's opinion on the standard of care or breach thereof if a physician performs a surgical procedure on the wrong organ or part of the patient's body.

There is no qualifying language in the statute that limits its application to intentional acts or precludes its application to inadvertent acts.

Moreover, the language of the other exceptions listed in 18 *Del. C.* § 6853 provides some clarification on what the legislature intended. Subsection (e)(1) states that a medical expert is unnecessary when "a foreign object was *unintentionally* left within the body of the patient following surgery."[19] In this exception, the legislature explicitly addressed whether a patient must show intent—or the lack thereof—to trigger § 6853(e)(1); therefore, it is reasonable to assume that if § 6853(e)(3) required the same or the opposite intent as subsection (e)(1), the legislature would have used express language to convey that requirement. The statute does not read, as Dr. Ryan would like, that a physician must *intentionally* perform a surgical procedure on the wrong organ, limb or part of the patient's body or that a physician is excused from liability where he intentionally performs a surgical procedure but unintentionally performs the procedure on the wrong organ. In order to produce an outcome that corresponds with the plain language of 18 *Del. C.* § 6853(e)(3) and the legislature's intent, we must reject Dr. Ryan's contention.

Furthermore, contrary to Dr. Ryan's contentions, *Williams* does not suggest that a physician must have intended the result of a surgery before a patient may gain the benefit of the 18 *Del. C.* § 6853(e)(3) presumption.[20] In *Williams*, the trial judge noted that to trigger the

17. *State v. Lillard,* 531 A.2d 613, 617 (Del. 1987).

18. *Silverbrook Cemetery Co. v. Dep't of Fin. of New Castle County,* 449 A.2d 241, 242 (Del. 1982); *Ryan v. State,* 791 A.2d 742, 743 (Del. 2002).

19. 18 *Del. C.* § 6853(e)(1) (emphasis added).

20. 1992 WL 240477 (Del.Super. Aug. 12, 1992).

medical expert exception, the surgeon would need to "purposefully—though erroneously—operate[ ] on the" wrong part of the body.[21] Even if we were to read intent into the statute, the intent appears to refer to the surgery and not the results of the surgery. Here, Dr. Ryan clearly intended to perform a biopsy. He did not, as the court hypothesized in *Williams,* "trip on his shoelace and lodge[ ] a [biopsy needle] in his patient's [kidney]."[22] Dr. Ryan purposefully placed the biopsy needle into Freeman's body and erroneously retrieved kidney tissue. Accordingly, Dr. Ryan performed a surgical procedure on the wrong part of Freeman's body, which renders a medical expert's opinion on the standard of care and breach thereof unnecessary.

### III. Did the Defense Conclusively rebut the Statutory Presumption?

■ Dr. Ryan's final contention addresses the degree to which a defendant must rebut the statutory inference of negligence. Specifically, Dr. Ryan contends that even if 18 *Del. C.* § 6853(e)(3) applies and Freeman did not need an expert to establish a *prima facie* case of negligence, his own evidence conclusively demolishes or rebuts the statutory presumption. Responding to Dr. Ryan's claims and relying on *res ipsa loquitur* precedent,[23] Freeman asserts that the jury alone determines if the defense successfully rebutted the presumption. Dr. Ryan counters Freeman's assertion by citing authority that he believes stands for the proposition that *res ipsa loquitur* no longer applies to medical malpractice litigation because the Health-

care Medical Negligence Insurance and Litigation statute exclusively occupies that field.[24]

*Lacy v. G.D. Searle & Co.,*[25] the case on which Dr. Ryan mistakenly relies, does not stand for the proposition that *res ipsa loquitur* no longer applies to medical malpractice litigation. Rather, the trial judge stated, "[t]he last sentence of § 6853, which bars drawing an inference or presumption of negligence on the part of a health care provider based upon facts which do not satisfy § 6853, makes *res ipsa loquitur* no longer applicable to cases involving health care providers *if the facts do not fall within § 6853."*[26]

In *Lacy,* a patient attempted to invoke § 6853(e)(1) and asserted that her physician unintentionally left a foreign object in her body after surgery. The trial judge found that the physician tried to remove Lacy's intrauterine device but failed on two occasions. The trial judge concluded that the physician's awareness of and intent to remove the foreign object removed Lacy's situation from the language in § 6853(e)(1). Unlike *Lacy,* Freeman does not attempt to invoke § 6853(e)(1); rather, she seeks protection under § 6853(e)(3) and the facts presented fall squarely within the confines of that subsection. Dr. Ryan inserted a surgical instrument into Freeman's body and retrieved tissue samples from Freeman's kidney instead of from her liver; therefore, he performed a surgical procedure on the wrong organ or part of the body.

Moreover, we have held that *res ipsa loquitur* does not apply in medical mal-

---

21. *Id.* at *2.

22. *Id.*

23. *Gen. Motors Corp. v. Dillon,* 367 A.2d 1020 (Del.1976); *Scott v. Diamond State Tel. Co.,* 239 A.2d 703 (Del.1968).

24. *Lacy v. G.D. Searle & Co.,* 484 A.2d 527, 530 (Del.Super.1984).

25. *Id.*

26. *Id.* (emphasis added).

practice actions where the "[o]nly proof is the fact that treatment of a patient terminated with poor results."[27] On the other hand, before the legislature enacted 18 *Del. C.* § 6853, *res ipsa loquitur* applied when the resulting injury was "[o]f a kind which ordinarily does not occur in the absence of negligence."[28] Here, the defense medical expert testified that it is extremely uncommon to conduct a biopsy and only retrieve non-target tissue. Therefore, we find the doctrine of *res ipsa loquitur* as now limited by 18 *Del. C.* § 6853 applies because Freeman's injury—the retrieval of kidney tissue only—appears to be inconsistent with the normal and usual result of liver biopsies.[29]

Dr. Ryan further contends that even if we analogized Freeman's incident to a common law *res ipsa loquitur* claim, then Delaware Rule of Evidence 304(c)(2) controls. Dr. Ryan's contention is not without merit. This rule permits a judgment for the defendant if he produces evidence that rebuts the inference of negligence or contradicts it such that the jury could not reasonably accept the inference of negligence. Dr. Ryan asserts that his medical expert's opinion, pictures of the biopsy, and testimony about the common occurrence of migration unquestionably rebutted and demolished the statutory inference of negligence.

While Dr. Ryan correctly compels us to address D.R.E. 304(c)(2), he fails to consider the entire rule. Although 304(c)(2) allows a judgment to be entered for the defendant where the defendant conclusively rebuts the presumption of negligence, the rule also provides that "[t]he defendant shall not be entitled to a directed verdict merely because he has introduced evidence in explanation and such evidence has not been rebutted." Although Dr. Ryan's medical expert explained how a needle might migrate during a biopsy, he also opined on the rare occurrence of conducting a biopsy and only retrieving non-target tissue. Allowing a "directed verdict" given this conflicting testimony is at odds with 304(c)(2) and overwhelming common law *res ipsa loquitur* precedent that requires a jury to resolve any inconsistency.[30] Because a reasonable jury could conclude that Dr. Ryan's expert inconsistently opined an appropriate standard of care given the extreme rarity of only retrieving non-target tissue, Freeman was entitled to a jury determination of the credibility and persuasiveness of Dr. Ryan's rebuttal evidence. For that reason, we hold that whether Dr. Ryan conclusively rebutted the presumption is a decision for the jury and not the court.[31]

## Conclusion

For the foregoing reasons, we REVERSE the judgment of the Superior Court and REMAND for further proceedings consistent with this opinion.

27. *Thomas v. St. Francis Hosp., Inc.*, 447 A.2d 435, 438 (Del.1982).

28. *DiFilippo v. Preston*, 173 A.2d 333, 338–39 (Del.1961).

29. *Id.*

30. *Thompson v. Cooles*, 180 A. 522, 525 (Del.Super.1935). *See also Delaware Coach Co. v. Reynolds*, 71 A.2d 69, 73 (Del.1950); *Christian v. Wilmington Gen. Hosp. Ass'n*, 135 A.2d 727, 731 (Del.1957); *and Vattilana v. George & Lynch, Inc.*, 154 A.2d 565, 567 (Del. 1959).

31. *Id.*