**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

ABIGAIL M. LEGROW
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
TELEPHONE (302) 255-0669

Submitted: October 20, 2021
Decided: January 31, 2022

David J. Soldo, Esq.
Patricia Winston, Esq.
Morris James LLP
500 Delaware Ave., Suite 1500
Wilmington, DE 19801

Carmella P. Keener, Esq.
Cooch and Taylor, P.A.
1007 North Orange St., Suite 1120
Wilmington, DE 19801

> **RE:  Legion Partners Asset Management, LLC v. Underwriters at Lloyds London**
> **C.A. No. N19C-08-305 AML CCLD**

Dear Counsel:

This dispute, which began in 2018, is nearing a close. The Court has issued two decisions regarding the defendant insurer's obligation to pay the plaintiff insured's defense costs. The only remaining issue before the Court relates to prejudgment interest, specifically the date upon which prejudgment interest should begin to accrue. Briefly stated, the parties dispute whether the insured is entitled to prejudgment interest beginning 30 days after each invoice was issued, or whether interest did not begin to accrue until the date the insured presented the invoices to the defendant insurer. After considering the parties' written submissions and the

authorities relied upon by each side, I conclude the insured only is entitled to prejudgment interest from the date the invoices were provided to the insurer.

**Factual Background**

The following analysis recites only the facts fundamental to the Court's current ruling. My two previous memorandum opinions contain the complete factual background of this case. On May 14, 2018, Justin P. Albert ("Albert"), a former employee of Legion Partners Asset Management LLC ("Legion"), initiated an action in Los Angeles County California Superior Court, Case No. BC706306 (the "LASC Action") against Legion and its two principal officers, managers, and directors, Raymond T. White ("White") and Christopher S. Kiper ("Kiper").[1] On that same day, Legion filed a demand for arbitration (the "Arbitration Demand") with the American Arbitration Association and asserted affirmative claims against Albert.[2] Albert filed an amended complaint in the LASC Action (the "Amended Complaint"), but on June 11, 2018, Legion filed a petition to compel arbitration and stay the LASC Action.[3]

On July 27, 2018, the Superior Court of California issued an order compelling Albert and Legion to enter binding arbitration.[4] After the LASC Action was stayed

---

[1] *Legion Partners Asset Mgmt, LLC v. Underwriters at Lloyds London*, Mem. Op. (Del. Super. Sept. 30, 2021) (hereinafter, "Mem. Op") at 3.
[2] *Id.* at 3-4.
[3] *Id.* at 6.
[4] *Id.* Albert's employment contract contained a binding arbitration clause.

pending arbitration, Albert filed a counterclaim (the "Counterclaim") against Legion in the arbitration proceeding (the "Arbitration").[5] The factual allegations in Albert's Counterclaim effectively mirrored the allegations he raised in the Amended Complaint.[6] Legion raised several affirmative defenses in response to the Counterclaim.[7] At the Arbitration's conclusion, the arbitrator held neither Albert nor Legion successfully proved their claims against the other.[8] On December 4, 2019, the Los Angeles Superior Court confirmed the arbitration award as a judgment after the parties stipulated to confirm the award and dismiss the LASC Action.[9]

On June 21, 2018, Legion's U.S. broker for its insurance agreement with Underwriters at Lloyds London ("Underwriters") filed notice for coverage of the Amended Complaint in the LASC Action (the "Coverage Claim").[10] On November 2, 2018, Underwriters sent a response letter (the "Coverage Letter") in which Underwriters acknowledged coverage obligations for the claims against White and Kiper in the LASC Action, subject to a reservation of rights, but denied any coverage obligation for either the Arbitration Action as a whole or for any counts asserted

---

[5] *Id.*
[6] *Id.*
[7] *Id.* at 7.
[8] *Id.* at 8.
[9] *Id.*
[10] *Id.* at 9. Legion, White, and Kiper are named insureds under a directors' and officers' liability policy issued by Underwriters (the "Policy").

3

against Legion in the LSAC Action.[11] Underwriters also refused to cover Legion for any expenses associated with the LASC Action or the Arbitration.[12]

On October 10, 2019, Legion's broker communicated a request to Legion's counsel that Legion transmit to Underwriters invoices of the Defense Costs incurred in the Arbitration.[13] Legion's counsel responded the next day, stating Legion filed suit in this Court's Complex Commercial Division because the amount in controversy exceeded $ 1 million, but failing to specify the precise amount Legion sought.[14] Underwriters did not receive the invoices until January 12, 2021.[15]

Legion filed this action against Underwriters on September 5, 2019.[16] Legion later moved for partial summary judgment, seeking a declaration that Underwriters had a duty to pay the defense costs Legion incurred in the LASC Action and the Arbitration; the Court granted that motion on September 25, 2020.[17] Although this Court held Underwriters was required to advance at least some of Legion's Defense Costs incurred in the Arbitration, it declined to allocate those expenses between covered and uncovered losses, and instead required the parties to meet and confer regarding allocation in accordance with the terms of the Policy.[18]

---

[11] *Id.*
[12] *Id.*
[13] Ltr. to the Court from C. Keener dated Oct. 20, 2021, D.I. 88 (hereinafter "Def.'s Ltr.") at 2.
[14] *Id.* at 3.
[15] *Id.*
[16] Mem. Op. at 9.
[17] *Id.*
[18] *Id.* at 10. The Court concluded the issue was not yet ripe for adjudication.

4

After the parties were unable to resolve their allocation dispute, Legion filed a motion for partial summary judgment regarding that issue.[19] Underwriters filed its own motion for partial summary judgment regarding allocation and the Policy's retention provision.[20] In its October 13, 2021 Memorandum Opinion (the "October 13 Opinion"), the Court (i) granted Legion's motion for summary judgment in part by finding no allocation of defense fees was necessary because Legion's affirmative claims strategically were defensive and therefore a covered loss under the Policy; and (ii) granted Underwriters' motion in part by finding that Legion's pre-tender attorneys' fees could not be applied to exhaust Legion's retention.[21] Additionally, the Court held Legion's defense costs were "reasonable."[22]

**Parties' Contentions**

After accounting for the self-insured retention and allocating 100% of the post-tender defense fees to Underwriters in accordance with the October 13 Opinion, the parties agree the principal amount Underwriters owes Legion is $1,186,946.08.[23]

---

[19] *Id.* at 13.
[20] *Id.*
[21] *See* Mem. Op.
[22] *Id.* at 22-24. Other than two factual disputes that effectively were mooted by the Court's October 13 Opinion, Underwriters did not dispute the reasonableness of Legion's defense costs.
[23] Ltr. to the Court from D. Soldo dated Oct. 20, 2021, D.I. 89 (hereinafter "Plf.'s Ltr.") Ex. 1. Those costs constitute defense costs incurred for the underlying LASC Action and the court-ordered Arbitration, which were incurred after the tender of the LASC Action to Underwriters, and which exceed the amount of the $250,000 Retention.

The parties also agree that prejudgment interest is recoverable under Delaware law at the legal rate.[24] But the parties disagree as to when such interest accrues.

Legion contends Delaware law requires Underwriters to pay for its breach of contract, including prejudgment interest, from the date such post-tender defense fees became due, not the date Legion produced invoices.[25] Following its argument, the date on which prejudgment interest accrues, according to Legion, is 30 days from each invoice.[26] In contrast, Underwriters contends prejudgment interest accrues only as of January 12, 2021, which is the date Legion presented its Defense Cost invoices to Underwriters. For the reasons described below, I find Underwriters has the correct position.

## ANALYSIS

In Delaware, prejudgment interest is awarded as a matter of right.[27] Such interest is to be calculated from the date payment is due.[28] The determination of the date when payment is due ordinarily is a question of law.[29] When a payment obligation arises from a contract, that contract generally establishes the date payment is due.[30] In *Citadel Holding Corp. v. Roven,* the Delaware Supreme Court held the

---

[24] 6 *Del. C.* § 2301(a).
[25] Plf.'s Ltr. at 2. Legion did not produce invoices until January 12, 2021.
[26] *Id.* at 5.
[27] *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 826 (Del.1992) (citing *Moskowitz v. Mayor & Council of Wilmington,* 391 A.2d 209 (Del. Super. 1978)).
[28] *Id.* (citing *Moskowitz v. Mayor & Council of Wilmington,* 391 A.2d 209, 210 (Del. Super. 1978)).
[29] *Id.* (citing *Watkins v. Beatrice Companies, Inc.,* 560 A.2d 1016 (Del. Super. 1989)).
[30] *Id.*

6

date payment was due under the parties' indemnity agreement was the date the indemnitee (1) specified the amount of reimbursement demanded (2) and produced a written promise to repay.[31] Other decisions have followed this approach.[32]

Underwriters contends that, under this settled standard, prejudgment interest did not accrue until the date Legion provided invoices to Underwriters.[33] I agree. Unlike the plaintiff in *Roven*, Legion voluntarily chose not to produce invoices and failed to specify even the amount of reimbursement demanded.[34] Legion made those choices despite Underwriters specifically requesting that information on at least two occasions. Payment could not be due until Underwriters was aware of the specific amount Legion sought in reimbursement. The record indicates Underwriters was not aware of that amount until Legion provided invoices to Underwriters on January 12, 2021.

---

[31] *Id.* at n. 10.

[32] *See, e.g., Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1058 (Del. Ch. Aug. 22, 2014) (holding a party seeking advancement is entitled to interest computed from the date of demand, defined as the date on which the party specified the amount of reimbursement demanded and produced his written promise to pay) (citing *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 at n. 10 (Del.1992)).

[33] Plf.'s Ltr. at 3-4.

[34] In Delaware, courts may turn to dictionaries for the "plain meaning" of a word. *See e.g., Freeman v. X-Ray Associates, P.A.*, 3 A.3d 224, 227-28 (Del. 2010) ("Because dictionaries are routine reference sources that reasonable persons use to determine the ordinary meaning of words, we often rely on them for assistance in determining the plain meaning of undefined terms.") (citations omitted). The word "specify" means "to name or state explicitly or in detail." Merriam-Webster's Dictionary (Electronic ed. 2021) (last visited Jan. 20, 2022). Unlike the insured in *Roven*, without providing the invoices, Legion was unable "to name or state explicitly or in detail" the reimbursement it demanded.

Legion cites *Pontone v. Milso Indus. Corp.* for the proposition that Underwriters' refusal to acknowledge a coverage obligation with respect to the Arbitration excused Legion from any obligation to provide invoices or otherwise specify the amount of coverage demanded.[35] Legion's reliance on *Pontone* is misplaced because that case factually is distinguishable. First, in *Pontone*, there was no dispute between the parties that the plaintiff's request for advancement set forth the specific amount of reimbursement sought.[36] Here, Legion failed to articulate before January 2021 the specific amount of reimbursement it was seeking. Second, the defendants in *Pontone* never complained that the information the plaintiff provided was insufficient to support his request. In that case, the Court held there was no evidence in the record to suggest the defendant companies would have honored their advancement obligations any sooner if the plaintiff had provided invoices at an earlier date.[37] Here, in contrast, Underwriters specifically inquired into the amount of defense costs incurred in the Arbitration, and Legion refused to provide any concrete response beyond stating the amount exceed $ 1 million.[38] This case is not one in which the Court can conclude the insurer's refusal to provide

---

[35] The Court in *Pontone* held that the defendants' expression of continuous denial was evidence they would not have honored advancement obligations any sooner if provided with invoices at an earlier date. *See Pontone v. Milso Indus. Corp.*, 2014 WL 2439973 at *18 (Del. Ch. May 29, 2014).
[36] *Pontone v. Milso Indus. Corp*, 100 A.3d 1023, 1058 (Del. Ch. Aug. 22, 2014) ("Each of these [demands] specified the monetary amount of advancement requested.")
[37] *Pontone v. Milso Indus. Corp.*, 2014 WL 2439973 at *18 (Del. Ch. May 29, 2014).
[38] Def. Ltr. at 2-3.

8

coverage excused the insured's obligation to specify the amount of reimbursement sought.

## CONCLUSION

For the foregoing reasons, prejudgment interest on the outstanding Defense Costs shall accrue as of January 12, 2021. Underwriters shall submit a conforming form of order within three business days specifying the amounts due. **IT IS SO ORDERED.**

Sincerely,

Abigail M. LeGrow, Judge