# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SALT MEADOWS HOMEOWNERS ASSOCIATION, INC., *et al.*, | § § § § | No. 94, 2023 |
| Plaintiffs Below, Appellants, | § § § § | Court Below: Superior Court of the State of Delaware |
| v. | § § | C.A. No. S17C-05-018 (S) |
| ZONKO BUILDERS, INC., | § § § | |
| Defendant Below, Appellee. | § § § | |

Submitted: October 11, 2023
Decided: January 3, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court of the State of Delaware. **AFFIRMED**.

Matthew J. Rifino, Esquire, Kate R. Buck, Esquire, Shannon D. Humiston, Esquire (*argued*), MCCARTER & ENGLISH, LLP, Wilmington, Delaware, *for Plaintiffs Below, Appellants Salt Meadows Homeowners Association, Inc., and Unit Owners.*

Colin M. Shalk, Esquire (*argued*), Kenneth M. Doss, Esquire, Wilmington, Delaware, CASARINO CHRISTMAN SHALK RANSOM & DOSS, P.A., *for Defendant Below, Appellee Zonko Builders, Inc.*

**SEITZ**, Chief Justice:

In May 2017, the Salt Meadows Homeowners Association and its condominium owners ("Salt Meadows") filed suit against the builder of their condominium complex ("Zonko"). Salt Meadows sought compensation for water damage to the buildings caused by faulty construction. The Superior Court granted Salt Meadows' summary judgment motion directed to liability but sent the damages question to a jury. The jury awarded Salt Meadows $11.3 million in general damages and $1.6 million for damages specific to the cost to repair support columns in the complex.

After the parties filed post-trial motions, the Superior Court denied Zonko's new trial motion but granted remittitur and reduced the general damage award to $8.3 million because some of Salt Meadows' damages were unsupported, speculative, and excessive. The court also granted Zonko's renewed motion for judgment as a matter of law relating to column damages. It found that Salt Meadows had at first claimed damages for columns supporting rear decks but then expanded its claim without evidentiary support to include all columns in the complex. Finally, the court awarded costs and pre- and post-judgment interest to Salt Meadows.

On appeal, Salt Meadows claims that the Superior Court erred by: (1) granting remittitur and Zonko's renewed motion for judgment as a matter of law related to column damages; (2) using the incorrect date of injury for calculating pre-judgment

2

interest; and (3) using the incorrect date to calculate post-judgment interest. For the reasons set forth below, we affirm the Superior Court's judgment.

I.

Salt Meadows is a five-building, twenty-unit condominium complex in Fenwick Island, Delaware. The plaintiffs are the homeowners association and unit owners. The defendant, Zonko Builders, Inc., completed construction of the condominium complex on April 11, 2007.[1] In February 2016, a Salt Meadows unit owner first discovered water damage in their building, which led other unit owners to raise similar issues with the homeowners association.[2]

In May 2017, Salt Meadows filed suit against Zonko, alleging "latent design and construction defects to various common elements [of the units] as a result of work done by [Zonko]."[3] Salt Meadows filed a motion for partial summary judgment and contended that Zonko was negligent as a matter of law and was responsible for damages of at least $3 million.[4] In a transcript ruling, the Superior Court granted summary judgment in part and held, based largely on deposition testimony from Zonko's witness, that Zonko was negligent when it supervised the work and constructed the units.[5] The court, however, eventually denied Salt

---

[1] App. to Appellants' Opening Br. at A1638 [hereinafter "A__"].
[2] A191.
[3] *Id.*
[4] *Salt Meadows Homeowners Ass'n, Inc. v. Zonko Builders, Inc.*, 2021 WL 2181426, at *1 (Del. Super. Ct. May 27, 2021).
[5] *Id.*

Meadows' summary judgment motion regarding damages because "the reasonableness of the costs incurred to date [was] in dispute."[6]

Before the damages trial, Salt Meadows offered to settle the litigation for $6.5 million.[7] Zonko declined.[8] Trial began in May 2022. During trial, the court denied Zonko's motion for judgment as a matter of law for damages specific to the cost to repair columns in the condominium complex but noted that it would revisit the issue later.[9] In a special verdict form, the jury awarded $11.3 million in general damages and $1.6 million for column damages.[10]

After the damages trial, Zonko filed a motion for new trial or remittitur for general damages and a renewed motion for judgment as a matter of law for column damages. Salt Meadows moved for costs and pre- and post-judgment interest. The court granted Zonko's motions in part.[11] First, for remittitur, the court granted the motion for two reasons: the jury relied on inadmissible and speculative evidence when it awarded $3 million for pandemic-related inflation and for additional cleanup costs;[12] and with repair costs through trial of $2.4 million, it was unlikely that the remaining repairs would cost more than the expert's "worst-case" estimate of $8.3

---

[6] Id.
[7] A2681.
[8] Id.
[9] Salt Meadows Homeowners Ass'n, Inc. v. Zonko Builders, Inc., 2023 WL 1370997, at *5 (Del. Super. Ct. Jan. 31, 2023) [hereinafter Post-trial Decision].
[10] A1807.
[11] Post-trial Decision, at *3.
[12] A4915.

million.[13]  In the court's words, "the extra $3M awarded by the jury, over the already-high $8.3M figure, shock[ed] the court's conscience and sense of justice."[14]  The court denied Zonko's motion for a new trial in light of its remittitur decision, but also found that the evidence was sufficient to support the jury's $8.3 million general damage verdict.[15]

Second, the court granted Zonko's renewed motion for judgment as a matter of law directed to column damages.  Salt Meadows' expert admitted that his knowledge was limited to the columns supporting the outdoor decks of two units.[16]  Most of the damages claimed at trial, however, covered columns throughout the complex that were different in location, structure, and function.[17]  Thus, the court found these damages speculative and unsupported by the record.[18]  In addition, the court concluded that Salt Meadows had "ample time" to develop evidence of damage to the other columns during discovery but failed to do so and "vigorously" argued against reopening discovery.[19]

Turning to Salt Meadows' motion for costs and interest, the court granted the motion in part.  The court awarded costs for several items, which are not contested

---

[13] Post-trial Decision, at *3.
[14] *Id.*
[15] *Id.*
[16] A1205.
[17] Post-trial Decision, at *4.
[18] *Id.* at *5.
[19] *Id.*

5

on appeal, and agreed that Salt Meadows was entitled to post-judgment interest from the date the judgment was entered. The parties submitted an agreed-upon form of order, in which post-judgment interest was calculated from the verdict date instead of the date of judgment. The court also awarded pre-judgment interest and chose the starting date as the date when the leaks appeared rather than the date when Zonko completed construction.

## II.

## A.

The first issue on appeal is whether the Superior Court exceeded its discretion when it ordered remittitur of the jury's general damages award.[20] Remittitur is appropriate when the jury's damages verdict "is so grossly disproportionate to the injuries suffered so as to shock the Court's conscience and sense of justice."[21]

As noted earlier, the Superior Court ordered remittitur for two reasons – the jury relied on inadmissible and speculative evidence when it included pandemic-related inflationary costs, and the admissible evidence at trial did not support the

---

[20] *In re Asbestos Litig.*, 223 A.3d 432, 434 (Del. 2019) (reviewing remittitur for abuse of discretion).

[21] *Maier v. Santucci*, 697 A.2d 747, 749 (Del. 1997). *See also Murphy v. Thomas*, 801 A.2d 11, 2002 WL 1316242, at *1 (Del. June 13, 2002) (TABLE) (jury verdicts were excessive and shocked the court's conscience when: (1) the plaintiff's economist used significantly magnified numbers when opining about an injury; (2) the plaintiff's counsel "used closing argument to try to inflame the jury;" (3) the jury was not given an instruction on mitigation of damages "in a case where mitigation was a significant issue;" and (4) some of the claimed damages lacked "good probative evidence").

amount awarded. Salt Meadows argues on appeal that the evidence at trial was sufficient to support the jury's damage award. Salt Meadows claims that it presented testimony from a Salt Meadows unit owner (also the president of the homeowners association, or "HOA President") and other witnesses that: damages were estimated at $8,300,925.76 in 2019; it spent $2,405,527.26 on repairs through the trial date; $6,210,306.04 remained to be spent on future repair work; at least $500,000 was needed for additional painting and cleanup costs; costs had increased about 30% since the 2019 estimate due to COVID-related inflation, and post-pandemic cost increases would be even higher.

Although the testimony Salt Meadows relies on was part of the trial record, Salt Meadows has not addressed the sequence of events and the reasons the court ordered remittitur. First, Zonko's attorney objected to the HOA President's testimony about the cost to complete repairs.[22] After the court overruled Zonko's objection, the HOA President estimated that painting and cleanup would cost an additional $500,000that was not covered by the 2019 repair estimate.[23] Following that, the HOA President testified that COVID-related inflation would increase costs by 30%, though she admitted that this figure was speculative.[24]

---

[22] Post-trial Decision, at *2; A3317; A3333; A3458; A3493; A4926.
[23] A4916.
[24] A3458.

7

Next, Salt Meadows called the expert responsible for the 2019 estimate, who testified – over Zonko's objection – that his original estimate was imprecise and outdated, and that a new estimate would be higher now because of increased costs throughout the supply chain.[25] The court once again overruled Zonko's objection.[26] When the expert – who possessed no expertise in finance or economics – was told not to provide an exact inflation percentage to the jury, he disregarded that instruction and testified to a fixed percentage – 30%.[27] The court struck the answer but found that "the 30% figure from [the HOA President's] testimony was reinforced" improperly by the expert's testimony.[28] According to the court, "the jury improperly added 30% to the $8.3M and also improperly added the $500,000.00 claimed by [the HOA President] as an estimate for painting and repairs not included in [the expert's] estimate."[29]

Thus, the Salt Meadows witnesses ill-suited to testify about inflation and increased costs improperly put before the jury cost estimates beyond the original $8.3 million estimate. The additional $3 million awarded, composed of the speculative 30% inflationary increase ($2.49 million) offered by the HOA President

---

[25] A3633.
[26] A3644.
[27] A3637.
[28] Post-trial Decision, at *2.
[29] *Id.* The plaintiffs argue that inflationary costs are a matter of common sense. That might be correct, but common sense is not a license for a witness with no apparent financial expertise to speculate about the appropriate inflation factor in this case.

and copied by the expert, and the speculative $500,000 of additional labor and materials costs claimed by the HOA President, should not have been before the jury.[30]

The court also concluded that the jury's verdict was excessive. It found that Salt Meadows spent $2.4 million through trial and that it was "extremely unlikely that additional repair work will cost more than $8.3M total."[31] The $8.3 million estimate was "likely a worst-case scenario that assumed all the units were damaged equally."[32] The court found it "unlikely Plaintiffs will need even the remaining $5.9M to complete the repairs" and "[t]he extra $3M awarded by the jury, over the already-high $8.3M figure, shocks the court's conscience and sense of justice."[33] Given these circumstances, which are fully supported by the record, the Superior Court did not exceed its discretion in reducing the damages to $8.3 million.[34]

## B.

The second issue on appeal is whether the Superior Court erred when it granted Zonko's renewed motion for judgment as a matter of law for damages

---

[30] *Id.*
[31] *Id.* at *3.
[32] *Id.*
[33] *Id.*
[34] Zonko attempted to raise by cross-appeal that Salt Meadows should have been precluded from testifying about general damages greater than the 2019 damage estimate. It did not file an opening brief in support of its cross-appeal, and therefore waived any cross-appeal arguments. *See* Del. Supr. Ct. R. 14(b)(vi)(A)(3); *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 270 n.73 (Del. 2022) (failure to raise issue in opening brief waived consideration of argument on cross-appeal).

specific to the support columns.  We review the Superior Court's decision to grant judgment as a matter of law *de novo*.[35]  "On appeal, we must determine 'whether the evidence and all reasonable inferences that can be drawn therefrom, taken in the light most favorable to the nonmoving party, raise an issue of material fact for consideration by the jury.'"[36]

In its post-trial decision, the Superior Court granted Zonko's motion because of a failure of proof.  The expert testimony relevant to column damages related only to two units, but Salt Meadows claimed damages for columns throughout the condominium complex.  In the Superior Court's estimation, the trial testimony failed to establish any logical connection between the damages from columns supporting the two outside decks to damages to other columns in the complex. [37]

Salt Meadows argues on appeal that the court improperly substituted its opinion for the jury's findings of fact.  It claims that the court erred because the damages awarded for unexamined columns were supported by testimony about the similar construction and damages of each unit, the expert's examination of the rear deck columns for two units, and the proof of costs for column repairs at one unit. When the evidence at trial is viewed as a whole, Salt Meadows contends, there is enough to sustain the jury's award.

---

[35] *Kardos v. Harrison*, 980 A.2d 1014, 1016 (Del. 2009).
[36] *Id.* at 1016-17.
[37] Post-trial Decision, at *5.

Once again, Salt Meadows has not addressed the sequence of events or the reasons the court granted the motion. As the court observed, Salt Meadows' expert testified that he discovered water damage on the rear deck of Unit 40149, and, through a cursory evaluation, found potential water damage on the rear deck columns of Unit 40154.[38] It cost $72,019.82 to repair the Unit 40149 support columns.[39] Salt Meadows first sought $1,440,396.40 in column damages for all decks.[40]

Zonko raised this discrepancy in a motion *in limine* to preclude trial testimony beyond the damages to Unit 40149 columns and renewed the motion during trial.[41] The court denied the motion, believing that the testimony would be limited to columns supporting the exterior decks of units, and discrepancies could be addressed through cross-examination.[42] Then, Salt Meadows shifted strategy at trial and sought damages for not just columns supporting rear decks, but hundreds of other columns throughout the complex.[43]

The issue came to a head when Salt Meadows showed the jury a demonstrative – never shown to the court or Zonko's attorneys before trial – that asked for over $4

---

[38] *Id.* at *3.
[39] *Id.* at *4.
[40] The Superior Court noted that, "[a]t times, the parties refer to 'twenty columns' that need repair, while in other places there are references to 'hundreds' of columns that need repair." *Id.*
[41] A1158; A2881.
[42] Post-trial Decision, at *4.
[43] *Id.*

million in column repair damages.[44] The court terminated the testimony and instructed the jury to disregard the demonstrative because it believed that Salt Meadows had misinformed the Court and Zonko's counsel about the extent of its column damages claim.[45]

Before the case went to the jury, Zonko moved for judgment as a matter of law on the column damages. The court denied the motion but said "it would entertain post-trial argument on the matter and noted that [Salt Meadows] would have difficulty meeting [its] burden."[46] Eventually, the court granted the motion because "the evidence known to the court at the time of the ruling on the motion *in limine* was quite different from what was presented at trial."[47] According to the court, Salt Meadows "went far afield and elicited irrelevant and unfounded opinions from their witnesses."[48] And "most of the 128 columns identified by [Salt Meadows' expert] were only superficially similar. While they might have been roughly the same width and length, their use in the construction was very different."[49] Thus, according to the court, "there was no credible evidence that damage to one set of columns supporting a deck would be found in every column in Salt Meadows."[50]

---

[44] *Id.*
[45] *See id.*
[46] *Id.* at *5.
[47] *Id.* (italics added).
[48] *Id.*
[49] *Id.*
[50] *Id.*

We agree with the Superior Court that Salt Meadows was persistently evasive about its column damages claims and presented an inconsistent and unsupported case for condominium complex-wide column damages.  Thus, the Superior Court did not err as a matter of law by granting the motion.

C.

Turning to pre-judgment interest, when the statutory requirements are met, Delaware law requires pre-judgment interest on tort-based damage awards:

> In any tort action for compensatory damages in the Superior Court . . . seeking monetary relief for bodily injuries, death or property damage, interest shall be added to any final judgment entered for damages awarded, . . . commencing from the date of injury, provided that prior to trial the plaintiff had extended to defendant a written settlement demand . . . in an amount less than the amount of damages upon which the judgment was entered.[51]

The Superior Court awarded pre-judgment interest starting in February 2016, "the date when the damages were discovered."[52]  The court reasoned that the statute "could have used the term 'tort' instead of 'injury' if the legislature intended the date of the tort to be the starting point for prejudgment interest."[53]  The court also recognized that the case was "unique," and found it unfair to award "$21M in prejudgment interest that accrued when [homeowners] were happily occupying and using their units for nine years" and "[a]t least some of the current plaintiffs

---

[51] 6 *Del. C.* § 2301(d).
[52] Post-trial Decision, at *8.
[53] *Id.*

13

purchased their units several years after they were constructed."[54]  According to the court, those newer owners "should not be awarded prejudgment interest back before they even owned the damaged units."[55]  We review statutory interpretation questions *de novo*.[56]

The parties do not dispute that pre-judgment interest was proper.  Salt Meadows raised tort claims and sought compensatory damages for property damage. Salt Meadows also extended a written settlement demand for a minimum of thirty days, the demand was less than the final judgment amount, and Zonko rejected it. The parties disagree, however, over the date when pre-judgment interest began to accrue.

Salt Meadows contends that interest should accrue from April 11, 2007, the date when Zonko finished construction of the condominium complex.  As Salt Meadows sees it, the "date of injury" is unambiguous statutory language supported by dictionary definitions that means the time when its rights were violated.  And Salt Meadows argues that its rights were violated when Zonko negligently constructed the condominium complex.

Zonko responds that if the Delaware General Assembly intended the tort and the injury to be the same, then § 2301(d) would state that interest is calculated at the

---

[54] *Id.*
[55] *Id.*
[56] *Freeman v. X-Ray Assocs., P.A.*, 3 A.3d 224, 227 (Del. 2010).

14

legal rate commencing from the date of the tort.[57] As it argues, "[t]he meaning of injury is hurt, damage, or loss sustained," and § 2301(d) separates the tort action from the injury or damages sustained.[58] In common parlance, the injuries are a consequence of the act, not the act itself.[59]

We agree with the Superior Court that, in a property damage case, the date of injury for pre-judgment interest purposes is the date that the plaintiff discovers the damage and starts to spend money for repairs. A pre-judgment interest award serves two purposes – to compensate a plaintiff for the lost use of its money, and to encourage settlement by imposing a cost on defendants for refusing a reasonable settlement offer less than the eventual damage award.[60] Here, Zonko completed construction of the condominium complex in 2007. But the leaks did not surface, and Salt Meadows did not spend money on repairs, until 2016. Accruing pre-judgment interest from the date money was spent to remedy the newly discovered leaks compensates Salt Meadows for the time value of money spent on repairs.[61]

---

[57] Answering Br. at 10.

[58] *Id.* at 12-13.

[59] *Id.*

[60] *See Fortis Advisors, LLC v. Dematic Corp.*, 2023 WL 2967781, *1 (Del. Super. Apr. 13, 2023) ("Prejudgment interest serves two purposes: (1) compensating the plaintiff for the lost use of its money; and (2) divesting the defendant of any benefit it received by retaining the plaintiff's money during the case's pendency."); *Rapposelli v. State Farm Mut. Auto. Ins. Co.,* 988 A.2d 425, 427 (Del. 2010) ("The General Assembly enacted 6 *Del. C.* § 2301(d) to promote earlier settlement of claims by encouraging parties to make fair offers sooner, with the effect of reducing court congestion.").

[61] The legislative history concerning failed amendments to the statute does not aid our analysis. Neither failed amendment speaks to the meaning of "injury." The failed amendments would have permitted judges to decline to award pre-judgment interest or to award pre-judgment interest from

It also serves the statute's salutary purpose of incentivizing settlement. Having turned down a settlement offer less than the jury award, Zonko must pay pre-judgment interest on the full award, even when Salt Meadows had spent only $2.4 million at the time of trial. That substantial cost – millions of dollars – could have been avoided if the settlement offer had been accepted.

D.

Finally, Salt Meadows claims that the Superior Court improperly awarded post-judgment interest from the date of the verdict instead of the date that judgment was entered by the court. The mistake, however, was not by the court. The court asked the parties to submit an agreed-upon form of judgment. The form submitted to the court by Salt Meadows and Zonko stated: "The Plaintiffs are awarded post-judgment interest at the rate in effect as of May 12, 2022, the date of the verdict."[62] The court entered the order as presented. Salt Meadows cannot complain that the court erred by entering the form of order Salt Meadows approved for filing.[63]

---

a date other than the date of injury and would have allowed judges to consider the reasons behind the delay and the settlement demand rejection. *See* Del. S.B. 310, Senate Amendment 2, 140th Gen. Assemb. (Del. 2000), available at https://legis.delaware.gov/BillDetail?legislationId=10987; Del. S.B. 310, House Amendment 2, 140th Gen. Assemb. (Del. 2000), available at https://legis.delaware.gov/BillDetail?legislationId=10780. Nor are the car crash cases helpful. In those cases, the tort and the injury occurred at the same time. *See, e.g.*, *Rapposelli*, 998 A.2d at 429.

[62] Superior Court Docket No. 306 (Letter to Court and Proposed Form of Order).

[63] *Id.*

## III.

We affirm the Superior Court's judgment.